IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2017 Session

## TENNISON BROTHERS, INC., ET AL. v. WILLIAM H. THOMAS, JR.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1310     Jim Kyle, Chancellor**

_____

### No. W2016-00795-COA-R3-CV
_____

This appeal involves parties with interests in neighboring properties who competed for the issuance of a billboard permit.  Rather than waiting for the resolution of the administrative process that would determine which of the two applicants was entitled to a billboard permit, one party illegally constructed his billboard without a permit in the midst of the proceedings.  Because of his action, the opposing party was unable to construct a billboard when the litigation ultimately ended in its favor.  The party who prevailed in the administrative process and its landlord both obtained default judgments against the party who constructed the billboard based on claims of intentional interference with business relations and inducement to breach a contract.  The trial court appointed a special master to calculate damages and adopted the master's report in its entirety, awarding the landlord approximately $1.1 million and awarding the party who planned to construct the billboard $3.9 million, which included treble damages.  We affirm and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBOSN, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jonathan Lynn Miley, Nashville, Tennessee, for the appellant, William H. Thomas, Jr.

Kathy Baker Tennison and Stuart Brian Breakstone, Memphis, Tennessee, for the appellee, Tennison Brothers, Inc.

Robert L.J. Spence, Jr. and Kristina Alicia Woo, Memphis, Tennessee, for the appellee, Clear Channel Outdoor, Inc.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Tennison Brothers, Inc. owns property near the convergence of two major interstate highways in Memphis, Tennessee. Due to the volume of traffic on the nearby interstates, the Tennison Brothers property is a prime location for a billboard. On August 19, 2004, Tennison Brothers entered into a lease agreement with Clear Channel Outdoor, Inc., whereby Tennison Brothers leased its property to Clear Channel for the purpose of erecting a billboard. The lease term was to commence on September 1, 2004, and extend for twenty years. Clear Channel was required to pay Tennison Brothers $1,000 upon execution of the lease, and when construction of the billboard was complete, its annual rent obligation would begin at the rate of $15,600 per year with a three percent increase each year thereafter.

Southern Millwork and Lumber Company owns property adjacent to the Tennison Brothers property. Days after the execution of the lease between Tennison Brothers and Clear Channel, on August 23, 2004, Southern Millwork entered into a lease with William Thomas, Jr., permitting Thomas to construct a billboard on the Southern Millwork property.

Tennessee's Billboard Regulation and Control Act provides that no person can construct a billboard within 660 feet of an interstate highway right-of-way (unless otherwise provided in the Act) without first obtaining a billboard permit from the Commissioner of the Tennessee Department of Transportation ("TDOT"). Tenn. Code Ann. § 54-21-104(a). TDOT Regulations further provide that no two structures shall be spaced less than 1000 feet apart on the same side of the highway. Tenn. Comp. R. & Regs. 1680-02-03-.03(1)(a)(4)(i)(I). The site for Clear Channel's proposed billboard on the Tennison Brothers property was approximately fifty feet from the site for Thomas's proposed billboard on the Southern Millwork property, so only one of the proposed billboards could legally be constructed.

TDOT Regulations provide that applications will be considered "on a first come, first served basis." Tenn. Comp. R. & Regs. 1680-02-03-.03(1)(a)(7)(v).[1] Thomas was the first to apply for a TDOT permit. His application packet was received on August 24,

---

[1]Some of these regulations have been renumbered since this matter began in 2004. We have provided the current section numbers for clarity, as the renumbering and amendments do not impact our analysis of the issues on appeal.

2004.  It included a copy of the lease agreement between Thomas and Southern Millwork, but the property owner's signature was not notarized.  On August 27, 2004, TDOT informed Thomas that his application was being returned for failure to have the property owner's signature notarized as required by TDOT Regulations.[2]  That same day, TDOT received Clear Channel's application for a permit to construct a billboard on the Tennison Brothers property.  Clear Channel's application was deemed complete, and it was ultimately approved.  In the meantime, Thomas resubmitted his application with the required notarization, but TDOT ultimately denied his application in light of the spacing requirement and Clear Channel's recently approved application for a billboard at its site fifty feet away.

Thomas requested a hearing after the denial of his application.  As a result, TDOT voided the billboard permit that Clear Channel had been granted pending the outcome of Thomas's appeal.  Clear Channel requested a hearing regarding this action as well.  After a hearing regarding both applications, an administrative law judge entered an "Initial Order" concluding that Clear Channel's application should have also been rejected because even though it contained a notarized signature of the property owner, the person who notarized it served as the real estate manager for Clear Channel.  Because Thomas's re-submitted application would have been "next in line for review," the administrative law judge concluded that Thomas's re-submitted application should be approved and that Clear Channel's previously issued permit should remain "voided."  This initial order from the administrative law judge was entered on October 20, 2005.

Clear Channel timely filed a petition for reconsideration of the initial order and then an appeal to the Commissioner of TDOT, such that the initial order never became a final order.[3]  Nevertheless, in reliance on the reasoning contained in the initial order, Thomas proceeded to construct a billboard on the Southern Millwork property despite the fact that he did not have a permit from TDOT.  He acquired a local building permit from Shelby County, which was also necessary in order to construct a billboard, and built the

---

[2]In 1989, TDOT amended its outdoor advertising rules to address the issue of billboards being placed on properties without the knowledge or consent of property owners.  TDOT regulations were amended to require the applicant to either show proof of ownership of the property or submit a lease or affidavit signed by the property owner stating that permission had been given to construct the proposed billboard.  The regulations and the application itself state that the property owner's signature must be notarized.  The regulations further provide that incomplete applications will be returned without action.

[3]"If an administrative judge or hearing officer hears a case alone under § 4-5-301(a)(2), the administrative judge or hearing officer shall render an initial order, which shall become a final order unless reviewed in accordance with § 4-5-315."  Tenn. Code Ann. § 4-5-314(b).  A petition for appeal from an initial order may be filed with the agency within fifteen days.  Tenn. Code Ann. § 4-5-315(b).  Notably, the entry of an initial order regarding a permit does not equate to the issuance of a permit.

structure in November 2005. Unbeknownst to either TDOT, Tennison Brothers, or Clear Channel, in December 2005, Thomas sold the unpermitted billboard to CBS Outdoor for $188,600, representing to CBS Outdoor that the permitting matters had been resolved and that TDOT had been ordered to issue the permit. However, for the next several years, Thomas continued to participate in the administrative proceedings regarding the TDOT permits as if he still held a lease on the property and owned the unpermitted billboard.

On May 18, 2006, the Commissioner of TDOT overturned the initial order entered by the administrative law judge and concluded that Clear Channel's application was not improper as a result of the notarization by its real estate manager. The Commissioner remanded the matter, with instructions, for further consideration by the administrative law judge. On March 5, 2007, the administrative law judge entered another initial order, this time concluding that Clear Channel's application was properly approved and that the TDOT permit should again be granted to Clear Channel, while Thomas's application should be denied. The administrative law judge specifically ruled that the billboard Thomas constructed without a permit was illegal and "should be immediately removed." On July 31, 2007, the Commissioner of TDOT entered a final order affirming the decision of the administrative law judge. Thomas argued before the Commissioner that he was justified in constructing the billboard without a permit due to the finding in the original initial order. However, the Commissioner rejected this argument as "spurious and utterly without merit." Simply put, the Commissioner explained, "An Initial Order is not a permit." The Commissioner noted that the initial order was appealed and that TDOT had *never* issued a permit to Thomas for his proposed billboard. The Commissioner found that Thomas's actions in constructing and operating a billboard without a permit were a clear violation of Tennessee Code Annotated section 54-21-104 and that the illegal billboard should be immediately removed. Even though Thomas no longer owned the billboard at issue (still unbeknownst to the other parties), Thomas filed a petition for judicial review of the Commissioner's final order in the chancery court of Davidson County pursuant to the Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-322.

While the UAPA petition for judicial review remained pending in Davidson County, Tennison Brothers instituted the present action on July 16, 2008, by filing a complaint for damages in the chancery court of Shelby County, naming Thomas, Southern Millwork, and Clear Channel as defendants.[4] The complaint described the lease executed in 2004 by Tennison Brothers and Clear Channel for the construction of a

_____

[4]Tennison Brothers eventually dismissed its claims against Southern Millwork, so we will not discuss its role in the lawsuit further in this opinion.

billboard and the ensuing litigation regarding the billboard perimts.  The complaint alleged that Thomas constructed his billboard on neighboring property in November 2005 even though no permit for the location was ever issued by TDOT.  The complaint described the orders entered by the administrative law judge and the Commissioner of TDOT in 2007 instructing Thomas to immediately remove the illegal billboard, but according to the complaint, the illegally constructed billboard still had not been removed by the time the complaint was filed in July 2008.  According to the complaint, the defendants refused to remove the billboard and continued to update it and profit from new advertisements.  Tennison Brothers alleged that the illegally constructed billboard and Thomas's refusal to remove it interfered with the planned construction of the billboard on the Tennison Brothers property.  The complaint specifically referenced the 1000-feet spacing requirement imposed by TDOT regulations.  The causes of action Tennison Brothers asserted against Thomas included intentional interference with business relationships and common law and statutory inducement to breach a contract.[5] Essentially, Tennison Brothers alleged that Thomas improperly interfered with and intentionally caused the termination of the lease between Tennison Brothers and Clear Channel by constructing a billboard without a permit and then refusing to remove it. Tennison Brothers sought compensatory damages and treble damages pursuant to Tennessee Code Annotated section 47-50-109 (providing for treble damages for a statutory claim of inducement to breach a contract).  Tennison Brothers also alleged that Thomas's actions were malicious and intentional, entitling Tennison Brothers to punitive damages.  The complaint also included a breach of contract claim against Clear Channel.

---

[5]The second count in the complaint was entitled "Common Law and Statutory Inducement to Breach a Contract and Intentional Interference with a Contract."  We will refer to this count as common law and statutory inducement to breach a contract.  *See Buckner v. Goodman*, No. E2016-00150-COA-R3-CV, 2016 WL 7479141, at *11 (Tenn. Ct. App. Dec. 29, 2016) (*no perm. app. filed*) (quoting *Whalen v. Bourgeois*, No. E2013-01703-COA-R3-CV, 2014 WL 2949500, at *12 n.2 (Tenn. Ct. App. June 27, 2014)) ("the common law action of 'intentional interference with contractual relations' is alternatively referred to as 'procurement of breach of contract,' as well as the statutory action's title of 'inducement to breach a contract'").    The statutory action provides:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract.
> The party injured by such breach may bring suit for the breach and for such damages.

Tenn. Code Ann. § 47-50-109.

The other cause of action asserted, intentional interference with business relations, "extends beyond situations in which there exists a valid contractual relationship." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 699 (Tenn. 2002).  However, the basis for the intentional interference with business relations claim asserted by Tennison Brothers was not any business relationship outside of its lease agreement with Clear Channel.  Tennison Brothers alleged that it had a business relationship with Clear Channel "in that [Tennison Brothers] entered into a lease agreement" with Clear Channel.

5

Tennison Brothers alleged that its lease agreement with Clear Channel was breached based on "a breach of the implied reasonable time of performance," as almost four years had passed since the lease agreement was executed.

Clear Channel filed an answer and a cross-complaint against Thomas (and Southern Millwork). In its answer to the breach of contract claim, Clear Channel admitted that performance under the lease agreement had been delayed as a result of the actions of *Thomas*, but Clear Channel denied that *it* had breached its lease agreement with Tennison Brothers. Then, in its cross-complaint, Clear Channel asserted various causes of action against Thomas, including intentional interference with a business relationship. Clear Channel also alleged that Thomas's tortious interference "procured a breach or violation" of the contract between Tennison Brothers and Clear Channel, entitling Clear Channel to compensatory damages and treble damages pursuant to the statute governing a claim for statutory inducement to breach a contract.

In December 2008, Thomas filed answers to the original complaint filed by Tennison Brothers and the cross-complaint filed by Clear Channel.[6] Due to ongoing discovery disputes, the trial judge, Chancellor Arnold Goldin, appointed a special master to make recommendations concerning motions to compel that were filed against Thomas. In a May 2009 report, the special master found that Thomas was served with discovery in September 2008 shortly after the complaint was filed and that his responses since then were "deficient as a matter of law." Thomas, who is himself a licensed attorney, raised general objections to all discovery rather than objecting to each individual request. The special master deemed his responses "woefully insufficient." In August 2009, the trial court adopted the report of the special master and his recommendation that Thomas be required to answer the discovery subject to some qualifications.

Tennison Brothers subsequently filed a third motion to compel seeking sanctions, and Clear Channel filed a motion for sanctions and default judgment because Thomas still had not adequately responded to the discovery filed over a year earlier, despite the special master's report and the trial court's order. In November 2009, the trial court entered an order striking Thomas's answers and granting default judgment in favor of Clear Channel and Tennison Brothers. The trial court noted that Thomas had refused to produce "even one document" responsive to the discovery requests of Tennison Brothers or Clear Channel despite two orders from the court requiring him to do so, and the court

_____

[6]In August 2008, the trial court entered a temporary restraining order prohibiting Thomas from selling or attempting to transfer any rights to the unpermitted billboard. Thomas *still* did not inform the trial judge or the plaintiffs that he had already sold his rights to the billboard in December 2007.

found that Thomas had displayed "a clear record of willful delay and contumacious conduct." Although default judgment was entered against Thomas, the issue of damages would be determined at a later hearing.

Also in November 2009, Thomas was ordered to testify after failing to comply with written discovery requests. During his testimony, Thomas revealed for the first time that he no longer had an interest in the unpermitted billboard because he had sold his leasehold interest in the real property as well as the billboard structure itself to CBS Outdoor in December 2005. As a result of this disclosure, the trial court entered an order "joining" CBS Outdoor as a party defendant pursuant to Tennessee Rule of Civil Procedure 19.01 and granted the parties leave to amend their pleadings. Tennison Brothers amended its complaint to also assert claims against CBS Outdoor for intentional interference with business relationships and common law and statutory inducement to breach a contract. CBS Outdoor filed an answer admitting that it purchased the billboard and lease from Thomas but claiming that it was unaware of the TDOT orders requiring removal of the billboard until it was joined in this litigation. Tennison Brothers eventually settled its claims against CBS Outdoor for $5,000, and an agreed order of dismissal was entered dismissing CBS Outdoor from the case.

The revelation about the sale of the billboard also prompted Clear Channel and TDOT to file a motion to dismiss Thomas's UAPA petition for judicial review, which was still pending in Davidson County, for lack of standing and mootness. The Davidson County Chancery Court granted the motion and dismissed the UAPA proceeding for lack of standing and mootness. This Court ultimately affirmed the dismissal based on lack of standing and mootness, concluding that Thomas had "render[ed] himself ineligible to receive the permits" by selling his interest in both the real property and the billboard structure itself. *See Thomas v. Tenn. Dep't of Transp.*, No. M2010-01925-COA-R3-CV, 2011 WL 3433015, at *8 (Tenn. Ct. App. Aug. 5, 2011). After this Court affirmed dismissal of Thomas's UAPA petition for judicial review of the TDOT decision, TDOT finally re-issued the billboard permit to Clear Channel. However, despite having obtained the necessary *TDOT* permit, Clear Channel was still unable to legally construct a billboard on the Tennison Brothers site because the necessary *local* permit from Shelby County had been obtained by Thomas in connection with his construction of the unpermitted billboard in 2005 and transferred to CBS Outdoor.[7] The unpermitted

---

[7]The Shelby County permit Thomas obtained would have become null and void if construction had not commenced within six months. By illegally constructing the billboard in the midst of the administrative proceeding regarding the TDOT permit, Thomas was able to avoid forfeiture of the local permit. He admits that "both permits are required in order to legally construct a billboard."

7

billboard still remained standing. TDOT eventually voided the permit it issued to Clear Channel after 180 days due to its failure to build.

In April 2010, Tennison Brothers filed yet another motion for sanctions against Thomas in the present litigation due to his failure to appear for his deposition and his continued refusal to produce requested documents. As a sanction, Tennison Brothers proposed that Thomas be prohibited from presenting any evidence at the hearing on damages. In June 2010, the trial court entered an order concluding that Thomas failed to appear at his deposition without justification, and as a result, he would not be allowed to present proof related to damages. The court clarified, however, that Thomas would be allowed to cross-examine the witnesses presented by other parties related to damages.

After this ruling, the case was transferred to another division of chancery court for hearing by another chancellor, Chancellor Kenny Armstrong. At that point, Thomas filed a motion to set aside the default judgment entered by Chancellor Goldin, arguing that the decision was extreme and unwarranted. After a hearing, Chancellor Armstrong denied the motion to set aside the default judgment.

The hearing on damages (or writ of inquiry of damages)[8] was finally held on January 7, 2013, three years after the default judgment was granted. The billboard Thomas constructed still remained standing as of the date of the hearing in 2013, despite the TDOT order to immediately remove it back in 2007. The only witnesses to testify were the manager of Tennison Brothers and the real estate manager for Clear Channel. Numerous exhibits were also introduced, including a report from an expert witness and valuation analyst retained by Clear Channel, and some deposition testimony was also read into the record. Although other claims were mentioned in the complaints, at the hearing on damages, Tennison Brothers and Clear Channel only sought to recover damages for intentional interference with business relations and common law and/or statutory inducement to breach a contract. Tennison Brothers calculated its damages based on the annual lease payments that it would have received from Clear Channel if Clear Channel had been able to construct its billboard in accordance with the twenty-year lease. Clear Channel calculated its damages based on the projected lost profits from advertisements on the proposed billboard that it was unable to construct. Clear Channel's expert calculated its lost profits based on similar billboards located in Memphis. In addition to hearing testimony regarding damages, Chancellor Armstrong also instructed

---

[8]A "writ of inquiry" is "[a] writ ordering the sheriff to empanel a jury and act as judge in a trial held to determine the amount of damages suffered by a plaintiff who has won a default judgment on an unliquidated claim." Black's Law Dictionary (10th ed. 2014).

the plaintiffs that "you've still got to prove your claim," despite the previous entry of a default judgment against Thomas. Thomas argued that the claims for damages should be dismissed because he had sold the unpermitted billboard and no longer maintained control over it. In response, the plaintiffs argued that Thomas's liability had already been determined by the entry of a default judgment, and therefore, his arguments regarding lack of control were irrelevant.

On July 10, 2013, the trial court entered its written order containing findings from the writ of inquiry of damages. At the outset, the trial court examined the effect of Chancellor Goldin's 2009 order striking Thomas's answers and granting default judgment against him in favor of Tennison Brothers and Clear Channel. The court acknowledged that because of the default judgment, the court was required to "consider as true" the well-pled allegations contained in the complaints, but the court went on to find that some of the allegations in the complaints were not "consistent with the proof in the record." Despite the contrary allegations in the complaints, the court concluded, based on the "proof presented," that Thomas did not have an improper motive, as required to support a claim of intentional interference with business relationships. The trial court also concluded that a breach of the underlying contract between Tennison Brothers and Clear Channel did not occur, as required to support a claim of common law or statutory inducement to breach a contract. As such, the trial court ultimately denied all claims for damages asserted by Tennison Brothers and Clear Channel. Tennison Brothers and Clear Channel appealed to this Court.

On appeal, this Court concluded that the trial court "erred in considering the issue of liability because the well-pled facts contained in the Appellants' respective complaints were dispositive on that question upon the grant of default judgment." *Tennison Bros. v. Thomas*, No. W2013-01835-COA-R3-CV, 2014 WL 3845122, at *1 (Tenn. Ct. App. Aug. 6, 2014) ("*Tennison I*").[9] However, we went on to consider the issue of liability as well, reasoning that appellate courts may consider "the sufficiency of the . . . complaint to sustain the decree of judgment." *Id.* at *8 (citing 5 C.J.S. *Appeal & Error* § 718 (1993); *Edington v. Michigan Mut. Life Ins. Co.*, 183 S.W. 728, 729 (Tenn. 1915)). Engaging in the same analysis applicable to a Rule 12.02(6) motion to dismiss, we examined the sufficiency of the complaints filed by Tennison Brothers and Clear Channel to determine whether the causes of action were sufficiently pled. *Id.* In other words, we looked to the complaints to determine whether they sufficiently alleged all of the requisite elements of each cause of action asserted. *Id.* at *9. Ultimately, we concluded that both Tennison

---

[9]We noted that Thomas did not raise any issue on appeal regarding whether the entry of the default judgment was proper. *Id.* at *7.

Brothers and Clear Channel pled facts sufficient to satisfy the prima facie requirements for claims of intentional interference with business relationships and inducement to breach a contract. *Id.* at \*13-14. Accordingly, we concluded that Tennison Brothers and Clear Channel "are entitled to damages against Mr. Thomas for the foregoing causes of action," and we remanded "for a determination of the appropriate damages." *Id.* at \*15. We said that Tennison Brothers and Clear Channel were "entitled to elect between treble damages and punitive damages" on remand. *Id.*

The proceedings on remand took place before Chancellor Jim Kyle. Despite this Court's opinion in *Tennison I,* on remand, Thomas insisted that the trial court was still required to determine not only the amount of damages but also whether Tennison Brothers and Clear Channel were *entitled* to damages. Thomas argued, again, that neither plaintiff was entitled to recover damages from him because he sold the unpermitted billboard in 2005 and no longer maintained control over it. He also argued that the trial court was not required to follow our decision in *Tennison I* because it was wrongly decided. For instance, despite the allegations in the plaintiffs' complaints that the unpermitted billboard structure was "illegal," and despite the final order from the TDOT administrative proceeding deeming the billboard "illegal," Thomas insisted that the unpermitted billboard was not illegal and that it did not actually interfere with Clear Channel's ability to construct a billboard on the Tennison Brothers property. The factual basis for this argument was that the unpermitted billboard was currently advertising for the store located on the Southern Millwork property, and therefore, according to Thomas's interpretation of the TDOT regulations, the sign would no longer need a permit from TDOT, was not illegal, and would not be considered for purposes of the TDOT spacing requirement.

Aside from any TDOT permitting issues, Thomas admitted that Clear Channel was still unable to construct its proposed billboard due to the fact that it did not hold the necessary *Shelby County* permit for a billboard. The Shelby County permit was admittedly obtained by Thomas and transferred to CBS Outdoor in connection with the sale of the billboard Thomas constructed in 2005. Because of a spacing requirement in the Shelby County ordinance, Thomas admitted that "as long as CBS [Outdoor] holds the local permit, Clear Channel can never receive a local permit for the Tennison site even if it were to apply for it and, most importantly, even if it properly held the TDOT permit." However, Thomas claimed that his actions in connection with the local Shelby County permit could not be considered in this litigation because the complaints only specifically mentioned the TDOT permit, not the Shelby County permit. In sum, Thomas claimed that his allegedly wrongful conduct as stated in the complaints was not the *legal cause* of the plaintiffs' damages. In response, Clear Channel and Tennison Brothers argued that

Thomas should not be permitted to relitigate issues of causation and the legality of his actions due to the entry of the default judgment and this Court's decision in *Tennison I.*

Chancellor Kyle referred the matter to a special master for a determination of the amount of damages and Thomas's financial status as it related to the issue of punitive damages. The trial court's order directed the special master to calculate damages against Thomas for the causes of action of intentional interference with business relationships and inducement to breach a contract. The special master was directed to submit a report outlining his findings to the court for a final determination of damages.

The parties' attorneys met with the special master and decided to rely on the testimony and exhibits presented at the original writ of inquiry hearing before Chancellor Armstrong rather than presenting additional live testimony. Nonetheless, the special master held a hearing, and additional exhibits and calculations were submitted for his consideration. On August 14, 2015, the special master issued a 33-page report as to the calculation of damages. Although the twenty-year lease between Clear Channel and Tennison Brothers commenced on September 1, 2004, the special master determined that damages should be calculated beginning April 1, 2007. As noted above, the lease provided that annual rent would be owed once construction of the billboard was complete. The special master reasoned that Clear Channel could have constructed the billboard after the administrative law judge ruled in March 2007 that Thomas's billboard was illegal and must be immediately removed. The special master calculated the compensatory damages owed to Tennison Brothers by looking to the annual rent provided in the lease that would have been owed for the remainder of the twenty year term, extending through September 2024. The special master found that the amount of compensatory damages should be trebled and that prejudgment interest should be added, but also, a credit of $5,000 should be deducted for the amount Tennison Brothers had already received in its settlement with CBS Outdoors. The special master did not make a specific recommendation regarding a total sum owed to Tennison Brothers because the total would depend on the date of the final order entered by the trial court.

Next, the special master considered the report filed by Clear Channel's expert witness regarding its lost profits. The special master found the expert's testimony credible and his opinions to be based on appropriate data. The special master accepted the expert's calculation that Clear Channel's lost net profits each month equaled $6,200. The special master concluded that this amount of compensatory damages should be awarded for the same period, from April 1, 2007, through September 2024, and trebled pursuant to the applicable statute. However, the special master did not recommend an

award of prejudgment interest because the amount owed was not easily calculable. The special master also made a recommendation as to punitive damages, if elected by either plaintiff.

The trial court held a hearing to hear the parties' arguments regarding the special master's report. Tennison Brothers and Clear Channel notified the court of their intention to elect treble damages rather than punitive damages. At the hearing, the special master testified as to how he followed the instructions of the court and calculated the parties' damages. Thereafter, the trial court entered an order confirming and adopting the special master's report in its entirety. The trial court subsequently entered a final judgment awarding Tennison Brothers $1,094,670.94 and awarding Clear Channel $3,906,000. Thomas filed a one-hundred-page motion to alter or amend, which the trial court denied. After a Rule 54.02 certification, Thomas timely filed a notice of appeal to this Court.[10]

## II. ISSUES PRESENTED

Thomas raises twelve issues, which we quote from his brief on appeal (but list in a different order):

1.  Whether portions of the order previously entered [by Chancellor Goldin] limiting Thomas'[s] ability to present a defense are unconscionable and should be declared void;

2.  Whether Clear Channel's and Tennison's complaints fail to state a claim upon which relief can be granted, therefore Thomas cannot be held liable for their alleged claims;

3.  Whether the trial court and the parties applied an erroneous interpretation to the Court of Appeals decision [in *Tennison I*] which resulted in manifest injustice contrary to all legal standards of fairness and legality;

---

[10]This Court entered an order staying the proceedings on appeal due to the fact that Thomas filed for bankruptcy protection. Thereafter, the bankruptcy court granted relief from the automatic stay to allow this appeal to proceed.

4. Whether the ruling by the Court of Appeals [in *Tennison I*] addressed all relevant and indispensable legal issues and if not was the trial court required to address them before it could make an assessment of "appropriate damages" as mandated by the Court of Appeals;

5. Whether even if Clear Channel's and Tennison's complaints had stated valid claims, the parties have failed to prove a causal nexus between Thomas's (purely technical) wrongful conduct and their claimed damages and therefore are entitled to merely nominal damages;

6. Whether the trial court was legally entitled to blindly adopt the special master's report without further consideration of key legal issues after failing to properly instruct the special master as to findings of fact and conclusions of law;

7. Whether the parties established with certainty and by competent, non-speculative evidence their entitlement to their claimed damages;

8. Whether the parties are entitled to future damages;

9. Whether the evidence in the record (regardless of who proffered it) demonstrated that the parties failed to mitigate their claimed damages;

10. Whether the parties demonstrated that they are both legally and factually entitled to recover treble and/or punitive damages;

11. Whether the trial court should have stricken the deposition testimony of TDOT employees . . . entered into evidence by Defendant [Thomas] as unimpeachable proof that the parties' claims are false as a matter of law;

13

12.     What impact does the Tennessee Billboard Act having been declared unconstitutional have on the present matter.

Clear Channel and Tennison Brothers ask this Court to affirm the trial court's awards in their entirety. For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. DISCUSSION

### A.   *Discovery Sanctions*

We begin with Thomas's argument that the order entered by Chancellor Goldin limiting Thomas's ability to present evidence regarding damages is unconscionable and void. To briefly recap, the order at issue was entered on June 4, 2010.[11] At that point, the trial court had already entered an order imposing discovery sanctions against Thomas on November 20, 2009, striking his answers and granting default judgment against him because he refused to comply with two prior orders regarding discovery. Although Thomas is a licensed attorney, the special master deemed his discovery responses "woefully insufficient," and the trial court found that Thomas had failed to produce even one document responsive to the discovery requests of Tennison Brothers and Clear Channel, which were propounded a year earlier. The trial court found that Thomas had a clear record of willful delay and contumacious conduct in this proceeding.[12]

---

[11]Thomas did not raise any issue on appeal in *Tennison I* to suggest that this order was improper. However, he claims that he was not required to challenge this discovery sanction in *Tennison I* because Chancellor Armstrong ultimately entered judgment in his favor after the writ of inquiry hearing, so he was the prevailing party in the trial court and asking this Court to affirm the trial court's judgment. Failure to raise issues in a first appeal may result in a waiver of those issues in a subsequent appeal. *See, e.g., Moore v. Taylor*, No. M2013-01590-COA-R3-CV, 2014 WL 2999744, at *3 (Tenn. Ct. App. June 30, 2014); *State v. Stewart*, 439 S.W.3d 906, 908 (Tenn. Crim. App. 2013); *Tindell v. West*, No. E2012-01988-COA-R3-CV, 2013 WL 6181997, at *6 (Tenn. Ct. App. Nov. 25, 2013); *Melton v. Melton*, No. M2003-01420-COA-R10-CV, 2004 WL 63437, at *3 (Tenn. Ct. App. Jan. 13, 2004). However, "an appellee is only required to raise as issues what it believes to have been *errors* committed by the trial court as issues for which the appellee seeks *relief* from the judgment." *In re Estate of Ross*, No. M2013-02218-COA-R3-CV, 2014 WL 2999576, at *2 (Tenn. Ct. App. June 30, 2014); *see* Tenn. R. App. P. 27(b) ("If appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief…"). We will assume for the sake of argument that this issue was not waived but conclude that it does not entitle Thomas to relief in any event.

[12]"Contumacious is defined as 'scornful' or 'recalcitrant.'" *Am. Exp. Centurion Bank v. Lowrey*, No. E2011-01247-COA-R3-CV, 2013 WL 937831, at *5 (Tenn. Ct. App. Mar. 11, 2013) (quoting Bryan Garner, *A Dictionary of Modern Legal Usage* 220 (2nd ed. 1995)). Contumacious conduct means "'[w]illfully stubborn and disobedient conduct.'" *Id.* (quoting *Black's Law Dictionary* 298 (5th ed.

14

Even after the entry of this order, Thomas still refused to cooperate. He admittedly refused to appear at his own deposition because the trial court had granted a protective order precluding Thomas from deposing an employee of Tennison Brothers. After Thomas refused to appear at his deposition, Tennison Brothers filed a second motion for sanctions asking the trial court to prohibit Thomas from presenting any evidence or defenses regarding damages. The trial court granted this motion based on its finding that Thomas was not justified in refusing to appear for his deposition or failing to produce the documents requested in the notice *duces tecum*.

Tennessee Rule of Civil Procedure 37.04 provides that if a party fails to appear for his or her deposition, after being served with proper notice, the court on motion "may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of Rule 37.02." The referenced paragraphs of Rule 37.02 specifically authorize the entry of "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence[.]" Tenn. R. Civ. P. 37.02(B). The trial court's choice and imposition of such a discovery sanction will not be disturbed absent an abuse of discretion. *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 356 (Tenn. Ct. App. 2009) (citing *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008)). "'We will reverse a trial court's decision to impose sanctions only if the court 'has acted unreasonably, arbitrarily, or unconscionably.'" *Id.* (quoting *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000)).

Here, we readily conclude that Chancellor Goldin acted reasonably in his decision. One would think that the trial court's first discovery sanction, the entry of default judgment, would have caused Thomas to "'feel duly chastened'" and "'comply promptly with future discovery orders.'" *Id.* at 357 (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976)). Unfortunately, it did not have that effect. Because Thomas persisted in his disobedient conduct and brazenly refused to appear at his deposition, the trial court's imposition of this additional sanction was not arbitrary or unconscionable. Given Thomas's long record of contumacious conduct in this case, "the punishment fits the offense." *Id.*

Thomas argues on appeal that he has been unlawfully denied his due process "right to present a defense." We do not agree. The only cases cited by Thomas on appeal with regard to this issue deal with the rights of an accused to present a defense in a criminal trial. Even in that setting, however, the criminal defendant's due process right to present a defense "'must yield to other legitimate interests in the criminal trial process.'" *State v. Williams*, No. W2013-01593-CCA-R3-CD, 2015 WL 1453389, at *14 (Tenn.

---

1979)).

Crim. App. Mar. 27, 2015) (quoting *State v. Brown*, 29 S.W.3d 427, 432 (Tenn. 2000)). "So long as the rules of procedure and evidence are not applied arbitrarily or disproportionately to defeat the purposes they are designed to serve, these rules do not violate a defendant's right to present a defense." *State v. Flood*, 219 S.W.3d 307, 316 (Tenn. 2007); *see, e.g.*, *State v. Huskey*, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059, at *85 (Tenn. Crim. App. June 28, 2002) (noting that the imposition of sanctions to preclude the testimony of defense experts in appropriate circumstances does not violate a defendant's right to present a defense). In the case at bar, the trial court's discovery sanction complies with the applicable Rules of Civil Procedure and was not imposed in an arbitrary or disproportionate manner. We discern no violation of Thomas's due process "right to present a defense."

## B. *Failure to State a Claim*

The next issue Thomas raises is "[w]hether Clear Channel's and Tennison's complaints fail to state a claim upon which relief can be granted[.]" As Thomas notes, this Court considered this exact issue in *Tennison I*.[13] At the outset, we explained that because of the entry of default judgment, "the trial court erred in considering the issue of liability because the well-pled facts contained in the Appellants' respective complaints were dispositive on that question upon the grant of default judgment." *Tennison I*, 2014 WL 3845122, at *1. Still, we went on to review the sufficiency of the complaints in order to determine whether Clear Channel and Tennison Brothers set forth sufficient facts to demonstrate the prima facie elements of each cause of action asserted. *Id.* We concluded that such review was appropriate on appeal, with the following explanation:

> Thus, appellate courts may review default judgments for fundamental error, i.e., error "apparent on the face of the record and going to the very foundation of the action." 5 C.J.S. Appeal & Error § 718 (1993). Consequently, on appeal from a default judgment or decree, an appellate court may consider the issue of subject matter jurisdiction, as well as "the sufficiency of the ... complaint to sustain the decree of judgment." 5 C.J.S. Appeal & Error § 718 (1993); *accord Edington v. Michigan Mut. Life Ins. Co.*, 183 S.W. 728, 729 (Tenn. 1915) (stating that, on appeal from default judgment, appellate court reviews sufficiency of complaint by same standard by which court considers motion to dismiss).

---

[13]Thomas argues on appeal that this Court should reengage in the Rule 12.02(6) analysis because the law of the case doctrine has an exception in the case of a clearly erroneous decision that would result in manifest injustice if allowed to stand. *See State v. Davidson*, 509 S.W.3d 156, 229 (Tenn. 2016).

*Id.* at *8.  Although we did not specifically cite *Nickas v. Capadalis*, 954 S.W.2d 735, 739-40 (Tenn. Ct. App. 1997), as the source of this passage, the *Nickas* Court used substantially similar language in its 1997 opinion.  After noting the "general rule [that] the defendant against whom a default judgment has been entered is thereafter precluded from litigating any substantive issues in the lawsuit, except for the establishment of the amount of damages," the *Nickas* Court said:

> Nevertheless, appellate courts may review default judgments for fundamental error, *i.e.*, error "apparent on the face of the record and going to the very foundation of the action."  5 C.J.S. Appeal & Error § 718 (1993).  Thus, on appeal from a default judgment or decree, an appellate court may consider the issue of subject matter jurisdiction, as well as "the sufficiency of the bill or the complaint to sustain the decree of judgment." 5 C.J.S. Appeal & Error § 718 (1993); *accord Edington v. Michigan Mut. Life Ins. Co.*, 134 Tenn. 188, 183 S.W. 728, 729 (1915) (stating that, on appeal from default judgment, appellate court reviews sufficiency of complaint by same standard by which court considers motion to dismiss).

*Id.*  In 2001, Tennessee Rule of Appellate Procedure 13 was amended in response to the *Nickas* case to add subsection (f), which provides:

> (f) Default Judgments. A defaulted defendant cannot raise on appeal the defense of failure to state a claim upon which relief can be granted . . . .

 The advisory commission comment to the 2001 amendment states:

> New Rule 13(f) overrules decisions such as *Nickas v. Capadilas*, 954 S.W.2d 735 (Tenn. App. 1997).  That opinion relied on the pre-Rules precedent of *Edington v. Michigan Mutual Life Ins. Co.*, 134 Tenn. 188, 183 S.W. 728 (1915).[14]  When the Rules of Civil Procedure took effect on January 1, 1971, however, *Edington* was no longer controlling because the holding conflicted with Rule 12.08 of the Civil Rules concerning waiver of

---

[14]In *Edington*, the defendant failed to answer within the time allowed by law, and an order pro confesso was taken whereby all of the facts stated were adjudged to have been admitted.  *Edington*, 183 S.W. at 729.  On appeal, the supreme court analyzed "whether the bill makes a case, assuming to be true all the facts therein stated."  *Id.*

17

defenses not raised by motion to dismiss or answer. See Tenn. Code. Ann. § 16-3-406: "After such rules shall have become effective, all laws in conflict therewith shall be of no further force or effect."[15]

Because Tennessee Rule of Appellate Procedure 13(f) overruled decisions such as *Nickas*, and *Edington* is no longer controlling, we conclude that this Court should not have engaged in a Rule 12.02(6) analysis in *Tennison I* in order to review the sufficiency of the complaints to determine whether they stated a claim after entry of the default judgment. Accordingly, we decline to address Thomas's argument on appeal regarding whether the complaints stated a claim for which relief can be granted and whether this Court's Rule 12.02(6) analysis in *Tennison I* was flawed. According to the plain language of Rule 13(f), "[a] defaulted defendant cannot raise on appeal the defense of failure to state a claim upon which relief can be granted[.]" Tenn. R. App. P. 13(f).[16]

## C. Scope of Remand after Tennison I

Thomas presents three issues on appeal that are somewhat vague but generally question the scope of remand after this Court's decision in *Tennison I*. His issues suggest that the trial court and the parties erroneously interpreted *Tennison I* and failed to address

---

[15]*See also* John R. Hardin, *Asserting Failure to State A Claim After Default Judgment Under Both the Federal and Tennessee Rules of Civil Procedure*, 30 U. Mem. L. Rev. 131, 152-53 (1999) (suggesting that courts were wrong to hold that a defaulting defendant could challenge the legal sufficiency of the complaint for the first time on appeal after the adoption of the Rules of Civil Procedure because the Rules provide that a defendant waives his right to raise the issue of whether the complaint states a claim upon which relief may be granted if the defense is not raised by the time of trial on the merits).

[16]We recognize that this Court has applied the Rule 12.02(6) analysis after the entry of default judgment in a number of other cases besides *Tennison I*, relying on *Nickas* and cases like it, even after the amendment to Rule 13. Professors Banks and Entman have noted this inconsistency:

> When the plaintiff's claim is for unliquidated damages, the plaintiff is required to present proof of the amount and the defendant who has been adjudged to be in default is entitled to litigate the issue of damages although the defendant is foreclosed from contesting liability. There is also authority for the proposition that because a party in default does not admit mere conclusions of law, the party may challenge the legal sufficiency of the complaint either at the hearing on the plaintiff's application for a default judgment or on appeal. Such holdings, however, seem inconsistent with the rule that the defense of failure to state a claim is waived if not presented at trial on the merits.

Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 9-3(a) (3d ed. 2009) (citing various cases relying on pre-Rules authority). According to the comment to Rule 13(f), it was meant to overrule "decisions such as" *Nickas* because they rely on "pre-Rules precedent." Unfortunately, Rule 13(f) has not been cited by any Tennessee appellate court, based on our research. However, its language is clear and cannot be ignored.

"indispensable legal issues" that required consideration on remand before the trial court could make an assessment of damages. For instance, he argues that Clear Channel and Tennison Brothers were still required to prove "a causal nexus" between Thomas's conduct and their claimed damages in order to recover any more than nominal damages. As support for his arguments, Thomas relies heavily on the Tennessee Supreme Court's decision in *Adkisson v. Huffman*, 469 S.W.2d 368 (Tenn. 1971). However, we conclude that *Adkisson* does not require the analysis Thomas suggests.

The *Adkisson* case arose out of a writ of inquiry hearing after the entry of a default judgment, and the pivotal issue was whether the defaulted defendant-driver could introduce evidence to show remote contributory negligence of the deceased pedestrian he struck.[17] *Id.* at 369. The Court concluded that such evidence was impermissible and examined numerous cases discussing the effect of a default judgment:

> It is laid down in all the books on practice, and is unquestionable, that a judgment by default is an admission of the cause of action. As a necessary consequence, upon an inquiry of damages, evidence showing that no cause of action existed is inadmissible.

*Id.* at 368 (quoting *Union Bank v. Hicks, Ewing & Co.*, 23 Tenn. 327 (1843)) (internal quotation omitted). To illustrate the point, the supreme court discussed *Warren v. Kennedy*, 48 Tenn. 437 (1870), where the plaintiff brought suit for damages for conversion of a mare and seven mules. Judgment by default was entered against the defendant, and upon a writ of inquiry, the defendant defended on the ground that there was no evidence that he had anything to do with the taking of the property. *Id.* at 372. The *Warren* court deemed this impermissible, explaining that

> the defendant, in suffering judgment by default, admitted that he had wrongfully taken the property, and there was no necessity to prove that fact before the jury. The only proof that was incumbent on the plaintiff to make, was as to the value of the property thus admitted to have been wrongfully taken[.]

---

[17]Note that this was prior to the adoption of comparative fault in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

19

*Id.* (quoting *Warren*, 48 Tenn. at 440). The *Warren* court explained that the defendant's defense on the ground that he had nothing to do with the taking "would have been proper if he had pleaded not guilty; but the judgment by default, if it admitted anything, was equivalent to an admission that he caused and procured it to be done." *Warren*, 48 Tenn. at 443.

The *Adkisson* court provided further guidance with the following quote:

> As judgments by default were entered, the complaints are now directed to a review of the assessment of damages. A judgment by default is an admission of the truth of the cause of action and of the several averments of facts in the declaration, and of the fair inferences and conclusions of fact to be drawn from the averments. It establishes the plaintiffs' right to maintain the actions and to recover some damages. It has the same effect, in law cases, as a judgment pro confesso in equity, which admits the allegations of facts in the bill. A final judgment may be immediately entered when the amount is ascertainable by simple calculation from the papers, but in other cases, where the amount is not liquidated, the judgment is interlocutory, and the damages must be ascertained by a jury upon proof.[18] Upon this question both sides have an equal right to be heard, but the proof must conform to the averments of the declaration, as in other cases. [citations omitted]
>
> . . . .
>
> Hence, after default, the burden of proof to show damages, other than nominal damages is on the plaintiff; and proof, both in aggravation and mitigation of damages, is open to consideration by the jury in assessing the damages, the same as in other cases. See 17 C.J. 1049, Sec. 353-4.

---

[18]Tennessee Code Annotated section 25-108 (repealed 1972) provided that

> [i]f the defendant fail to appear and defend at the time prescribed by law, judgment by default may be taken against him. In such case, the judgment is final if the amount of the plaintiff's claim can be ascertained by simple calculation from the papers; when the amount cannot be thus readily ascertained, the damages will be assessed by a jury impaneled at the same term for the purpose.

*Burnette v. Sundeen*, 152 S.W.3d 1, 4 (Tenn. Ct. App. 2004) (quoting Tenn. Code Ann. § 25-108 (repealed 1972). Tennessee Rule of Civil Procedure 55.01 adopted the substance of this statute and provides that upon entry of default judgment, "'[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages . . . the court may conduct such hearings . . . as it deems necessary and proper[.]'" *Id.* (quoting Tenn. R. Civ. P. 55.01).

*Adkisson*, 469 S.W.2d at 373 (quoting *Grace v. Curley*, 3 Tenn. App. 1 (1926)). In sum, then, a default judgment "admits that plaintiff has stated a cause of action in the pleadings," and evidence that "questions the right of action" is inadmissible at the writ of inquiry hearing. *Id.* (quoting *Wileman v. Mayor and Aldermen of Town of Tullahoma*, 195 S.W.2d 325 (Tenn. Ct. App. 1946)).

On appeal, Thomas claims that despite the entry of a default judgment against him, Tennison Brothers and Clear Channel still had the burden to prove that the damages they sought to recover were caused by Thomas's conduct. He insists that a plaintiff who prevails by entry of a default judgment is not entitled to recover damages that have no relation to the purported wrongful conduct of the defendant. We do not disagree with this latter statement. This Court has recognized that "the mere entry of a default judgment in favor of a party does not, *ipso facto*, entitle that party to carte blanche damages. Rather, a trial court may only award those damages to which the party is legally entitled." *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, at *6 (Tenn. Ct. App. Dec. 8, 2016) (*no perm. app. filed*). For example, in *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 456 (6th Cir. 2011), the plaintiff who obtained a default judgment in a wrongful foreclosure action could not recover medical expenses incurred by himself and his wife because he failed to demonstrate "that the foreclosure of his property *caused* the ailments leading to those medical expenses." *See also Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984) (explaining that after entry of default judgment, the trial court was required to determine the extent of the plaintiff's disability and the benefits to which the plaintiff was entitled from the evidence introduced before the court).

Only losses "directly and proximately resulting" from wrongful interference with a contract may be included within the measure of damages. *Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co.*, 734 S.W.2d 322, 324 (Tenn. 1987). However, the issues that Thomas wanted to pursue on remand regarding (what he calls) "causation of damages" are not really issues regarding the extent of the damages he caused; they are issues that impermissibly seek to question "the right of action" after the entry of a default judgment.[19] *Adkisson*, 469 S.W.2d at 373 (quotation omitted). For example, Thomas

---

[19]Thomas principally relies on another quote from *Adkisson*:

> As the default admits a cause of action, proof thereof need not be offered, and plaintiff is entitled to nominal damages without introducing evidence. . . . Generally speaking, all evidence conforming to the pleadings and tending to show the amount of the demand or matters in aggravation of the injury is admissible; while under like limitations evidence tending to mitigate or reduce the damages is admissible on behalf of defendant. Evidence of matters which would have constituted a good plea in bar to the cause of action is

argues that "it was not [his] conduct . . . that kept Clear Channel from building its own billboard" because his billboard was not actually illegal or an interference and in any event he no longer controlled it. Thomas insists that Clear Channel was unable to construct its billboard due to its own failure or inability to procure the local permit from Shelby County. However, like the defaulted defendant in the mare and mule case, Thomas cannot now argue that he did not have "anything to do with it." *Warren*, 48 Tenn. at 443. "[T]he judgment by default, if it admitted anything, was equivalent to an admission that he caused and procured it to be done." *Id*. A default judgment "admits the allegations in the bill" and "admits that plaintiff has stated a cause of action in the pleadings." *Adkisson*, 469 S.W.2d at 372, 374 (quotations omitted).

Thomas asks this Court to consider a decision from the Texas Supreme Court examining the subject of causation as it relates to a default judgment. However, the court's discussion only confirms our point regarding Thomas's arguments. In *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984), the court explained that there are two distinct aspects of causation:

> In a personal injury case, the plaintiff typically alleges that the defendant's conduct caused an event—an automobile accident, a fall, or in this case, the release of chemical fumes—and that this event caused the plaintiff to suffer injuries for which compensation in damages should be paid. Thus, at trial the plaintiff must establish two causal [n]exuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event

generally held to be inadmissible. *It may, however, happen that evidence which might, if used, have been available to prevent a judgment may after judgment be available to reduce the damages to a mere nominal sum.* *Adkisson*, 469 S.W.2d at 374 (quoting *Boyd v. Merchants Delivery Co. and Clarkson*, 7 Tenn. App. 416 (1928)) (emphasis added). Ignoring the previous sentence containing the general rule, Thomas broadly interprets the last sentence to mean that he can continue to use evidence that might have prevented a judgment to reduce damages after default. Specifically, he seeks to dispute "the actual causes of Clear Channel's failure to construct its billboard," claiming that such evidence is "relevant to the determination of damages." We disagree with Thomas's broad interpretation. The *Boyd* case recognized the *possibility* that evidence might pertain to both liability and damages, as the defaulted defendant in that case sought to introduce the record of an earlier judgment, which had been paid, to reduce damages. *Id.* at 427. The *Boyd* court concluded that this was competent evidence regarding the *reduction* of damages, even though it might have also been competent evidence to prevent liability before the default as well. *Id.* However, the court also noted that after a default, "evidence is inadmissible to show that no cause of action existed," *id.* at 424, and therefore, the defendant could not use such evidence after default to "defeat plaintiff's right to recover at least nominal damages." *Id.* at 427. Here, Thomas is not attempting to reduce his damages but to eliminate his liability by impermissibly attempting to show that no cause of action existed.

22

sued upon and the plaintiff's injuries.

The causal nexus between the defendant's conduct and the event sued upon relates to the liability portion of plaintiff's cause of action. Here, we use the term "liability" to mean legal responsibility for the event upon which suit is based. In a negligence action, liability is usually established by proving that the defendant's negligence was a proximate cause of the event sued upon; in a products liability action in which a manufacturing defect is alleged, liability is established by proving that a product was placed in the stream of commerce containing a defect which was a producing cause of the event made the basis of suit. It is this causal nexus between the conduct of the defendant and the event sued upon that is admitted by default. From the rule that a default judgment conclusively establishes the defendant's liability, it follows that a default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based.

. . . . The [second] causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action. Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event made the basis of suit; that the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action. *See Mitchell v. Town of Ahoskie*, 190 N.C. 235, 129 S.E. 626 (1925). To hold, as we do, that a defaulting defendant does not admit that the event sued upon caused [] plaintiff's alleged injuries is entirely consistent with the rule that a judgment taken by default admits all allegations of fact set out in the petition, except for the amount of damages. Proving that the event sued upon caused the plaintiff's alleged injuries is part and parcel of proving the amount of damages to which the plaintiff is entitled. The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence.

In the case before us, Thomas has blurred the distinction between the two causal nexuses. Despite the entry of the default judgment, Thomas maintains that *his conduct* did not cause the *damages* incurred by Clear Channel and Tennison Brothers. However, using the language of the Texas court, the causal nexus between Thomas's "conduct and the event sued upon," relating to his liability, has already been "admitted by default." *Id.* at

23

732. That was the first causal nexus -- related to his legal responsibility for the event sued upon. *See id.* Because "a default judgment conclusively establishes the defendant's liability, it follows that a default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based." *Id.* In other words, the entry of default judgment established that Thomas's conduct – his improper interference with the contract between Clear Channel and Tennison Brothers -- resulted in their inability to construct their billboard. While it is true that Clear Channel and Tennison Brothers were only entitled to recover damages for "injuries caused by the event made the basis of suit," arising from the cause of action, Thomas cannot continue to litigate his liability or legal responsibility for that event. *Id.* The default judgment established his liability on the causes of action.[20]

On remand after *Tennison I*, the trial court correctly concluded that the scope of the remand was "for a determination of the appropriate damages" and appointed a special master to report on the calculation of damages. Thomas attempted to argue before the special master and to the trial court numerous issues regarding the legality of his billboard, his lack of control over it due to the sale, the local permitting issues, and other matters. The special master declined to consider these issues regarding Thomas's actions, as they related to causation. The special master reasoned that it had already been established that Clear Channel and Tennison Brothers were precluded from building their

---

[20]Thomas also argues that *Discover Bank v. Morgan*, 363 S.W.3d 479 (Tenn. 2012), requires a plaintiff to establish causation as it relates to the defendant's conduct or liability even after entry of default judgment. We disagree. In that case, a plaintiff obtained a default judgment against Discover, a credit card issuer, for violation of the Tennessee Consumer Protection Act. *Id.* at 484. After a hearing, the trial court awarded the plaintiff damages for loss of credit. *Id.* at 486. As a matter of first impression, the supreme court considered whether a loss of available credit qualifies as "an ascertainable loss" and "actual damages" that can be recovered under the TCPA. *Id.* at 496-97. The court concluded that such damages should be recoverable "where the plaintiff suffers a demonstrable loss of credit, proximately caused by the defendant, resulting in actual harm." *Id.* at 483. The court looked to the allegations of the complaint and the proof presented at the damages hearing but found insufficient information to support the assessment of damages. *Id.* at 498-99. In the end, the court found it appropriate to remand for the plaintiff to have a new hearing on damages "[b]ecause [the court had] never previously determined the requirements to prove damages for loss of consumer credit." *Id.* at 499. On remand, the plaintiff would be given "the opportunity to prove that she has suffered a demonstrable loss of credit, *proximately caused by Discover*, that resulted in actual harm to her -- in enough detail to allow the trial court to make a fair and reasonable assessment of the actual damages." *Id.* at 500. The court remanded for this determination even though a default judgment had been entered against Discover. However, we do not read the court's opinion as requiring a re-examination of the type of causation issues that Thomas seeks to present in this appeal after default judgment. *Compare Clark v. Sputniks, LLC*, 368 S.W.3d 431, 436 (Tenn. 2012) (explaining that due to a default judgment, the following allegation from the complaint was conclusively established: "That as a proximate result of the negligence of the defendants . . . for its [sic] failure to take reasonable steps to protect its customers from foreseeable dangerous conditions, the plaintiff's husband [] was killed.").

24

billboard *because of* Thomas's erection of a billboard and his refusal to remove it. At the hearing on the special master's report, the trial judge likewise suggested that the issue on remand was limited to how much Clear Channel and Tennison Brothers lost due to their inability to construct a billboard. In other words, he added, the issue was "not whether there is an amount, but what is the amount[.]" Having thoroughly reviewed the record, we reject Thomas's assertion that the trial court erroneously interpreted the scope of remand after *Tennison I* or failed to address indispensable legal issues that required consideration before the trial court could make an assessment of damages. "[A] plaintiff may obtain a default judgment without a hearing on the merits." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003). "[U]pon entry of a proper default judgment, the subsequent proceedings should be confined to the establishment of the amount of damages." *Witter v. Nesbit*, 878 S.W.2d 116, 119 (Tenn. Ct. App. 1993). The entry of a default judgment "establishes the non-defaulting party's right to maintain the action and recover some damages." *Husk v. Thompson*, No. M2016-01481-COA-R3-CV, 2017 WL 3432686, at *4 (Tenn. Ct. App. Aug. 10, 2017) (*no perm. app. filed*) (citing *Sherick v. Jones*, No. 87-351-II, 1988 WL 55028, at *6 (Tenn. Ct. App. June 3, 1988)). Although the trial court may immediately enter final judgment without a determination by proof when the amount of damages is liquidated, the amount of unliquidated damages "remains an open question to be determined by proof." *Id.* However, as we ultimately concluded in *Tennison I*, Clear Channel and Tennison Brothers "are entitled to damages against Mr. Thomas for the foregoing causes of action." *Tennison I*, 2014 WL 3845122, at *15. We now turn to examine the issues raised by Thomas on appeal regarding the calculation of damages.

### D.   *Damages*

In *Tennison I*, we discussed "the types of damages allowed in this case" for purposes of the remand. *Id.* We explained that "'[o]ne who is liable to another for interference with a contract or prospective contractual relation is liable for damages for [] the pecuniary loss of the benefits of the contract or the prospective relation.'" *Id.* (quoting *Dorsett*, 734 S.W.2d at 324). Tennessee Code Annotated section 47-50-109 provides that "in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of contract." In fact, this statute "'mandates the trebling of the amount of damages resulting from or incident to the breach of contract.'" *Tennison I*, 2014 WL 3845122, at *15 (quoting *Dorsett*, 734 S.W.2d at 324). We said that Tennison Brothers and Clear Channel were entitled to elect between treble damages and punitive damages on remand, and in accordance with this directive, both plaintiffs elected treble damages. The special master and the trial court calculated the rent that Tennison Brothers would have been owed under the lease and adopted the

expert witness's estimation of the lost profits that Clear Channel would have realized from advertisements on the proposed billboard. The trial court ultimately awarded Tennison Brothers $1,094,670.94 and Clear Channel $3,906,000. Thomas raises several issues challenging these awards of damages.

### 1. The Role of the Special Master

First, Thomas suggests that the trial court did no more than "rubber stamp" or "blindly adopt" the special master's report without exercising independent judgment. He argues that the trial court approved the special master's report without independent consideration of the pertinent issues and insists that the trial court was required to "make the ultimate determination" on the issues.

Rule 53.01 of the Tennessee Rules of Civil Procedure authorizes trial courts to refer matters to special masters. "The practice of referring damages issues to a special master is common in Tennessee." *Vraney v. Med. Specialty Clinic, P.C.*, No. W2012-02144-COA-R3-CV, 2013 WL 4806902, at *34 (Tenn. Ct. App. Sept. 9, 2013) (citing *Clear Channel Outdoor, Inc. v. A Quality, Inc.*, No. W2007-00213-COA-R3-CV, 2008 WL 2901345, at *7 (Tenn. Ct. App. July 29, 2008)). However, Rule 53.04 requires the trial court to "act upon the report of the master." Tenn. R. Civ. P. 53.04(2).

> This rule requires the judgment of the trial court. The court cannot abdicate to the master its responsibility to make a decision on the issue in question. It must do more than "rubber stamp" what the master has done. Should it decide to confirm the master's report, it must be satisfied, after exercising its independent judgment, that the master is correct in the decision he has made.

*Peacher-Ryan v. Heirs At Law of Ruth James Gaylor*, No. W2013-02801-COA-R3-CV, 2015 WL 1598072, at *5 (Tenn. Ct. App. Apr. 9, 2015) (*no perm. app. filed*) (quoting *Lakes Property Owners Ass'n, Inc. v. Tollison*, No. 03A01-9402-CV-00038, 1994 WL 534480 (Tenn. Ct. App. Oct. 4, 1994)). The trial court "may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Tenn. R. Civ. P. 53.04(2). Thus, the trial court is entitled to adopt a special master's report in full. *Varner Constr. Co. v. Marrs*, No. W2000-01029-COA-R3-CV, 2002 WL 818234, at *4 (Tenn. Ct. App. Apr. 18, 2002). "While the trial court need not issue separate findings and conclusions, it should not simply adopt the

report without consideration."[21]  *Hardin v. Hensley-Hardin*, No. E2014-01506-COA-R3-CV, 2015 WL 9271557, at \*8 (Tenn. Ct. App. Dec. 18, 2015), *perm. app. dismissed* Tenn. Mar. 10, 2016) (citing *Filmtech v. McAnally*, No. E2011-00659-COA-R3-CV, 2011 WL 6780176, at \*2-3 (Tenn. Ct. App. Dec. 22, 2011)).  Ultimately, "'[t]he judgment is to be that of the trial court, and not the master.'"  *In re Estate of Burnette*, No. E2014-02522-COA-R3-CV, 2016 WL 626041, at \*5 (Tenn. Ct. App. Feb. 16, 2016) (*no perm. app. filed*) (quoting *Lakes Property Owners*, 1994 WL 534480, at \*3-4). "Conducting a full hearing on objections and an independent review of the record indicates an exercise of independent judgment."  *Brady v. Brady*, No. M2014-01598-COA-R3-CV, 2015 WL 9946259, at \*3 (Tenn. Ct. App. Aug. 18, 2015) (*no perm. app. filed*) (citing *Tarver v. Garrison's Custom Cabinets, Inc.*, No. W2006-01765-COA-R3-CV, 2007 WL 3194566, at \*2 (Tenn. Ct. App. Oct. 31, 2007)).

Here, the trial judge conducted a full hearing and heard the parties' arguments regarding their objections to the master's report.  The trial judge noted that it was his task to determine whether to accept the special master's report, reject it, or modify it.  The trial judge stated that he had read all of the parties' lengthy memoranda submitted prior to the hearing, and he questioned the attorneys regarding specific points they made.  Then, the trial judge directed the special master to testify regarding how he followed the trial judge's instructions in the order of reference and how he calculated the plaintiffs' damages in his report.  Each attorney was allowed to examine the special master during his testimony before the trial judge.  All of the exhibits relied on by the special master were tendered into the record as well as some additional exhibits.  After the parties submitted proposed findings of fact and conclusions of law, the trial court entered an order confirming and adopting the special master's report and awarding damages to Clear Channel and Tennison Brothers in the amounts recommended by the special master.  The trial court appropriately exercised independent judgment in its decision to adopt the special master's report and did not "blindly" adopt it.

The fact that the chancellor adopted the special master's report in its entirety impacts our standard of review on appeal.  A concurrent finding of a special master and chancellor is conclusive on appeal, except where the finding is on an issue not properly referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence.  *In re Conservatorship of Duke*, No. M2015-00023-COA-R3-CV, 2015 WL 5306125, at \*6 (Tenn. Ct. App. Sept. 3, 2015) (*no perm. app. filed*); *Delta Dev. Corp. v. F. Fani Gulf Int'l*, 393 S.W.3d 185, 200 (Tenn. Ct.

---

[21] "The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."  Tenn. R. Civ. P. 52.01.

27

App. 2012); *see* Tenn. Code Ann. § 27-1-113 ("Where there has been a concurrent finding of the master and chancellor, which under principles not obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding."). This standard of review is similar to that applied when reviewing a jury verdict -- we must affirm if there is any material evidence to support the trial court's concurrence. *Delta Dev. Corp.*, 393 S.W.3d at 200. The proper measure of damages is a question of law, but the actual calculation of damages is a question of fact. *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *13 (Tenn. Ct. App. Nov. 21, 2012); *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 789 (Tenn. Ct. App. 2010).

## 2.    Certainty of Damages

The next two issues raised by Thomas on appeal are "[w]hether the parties established with certainty and by competent, non-speculative evidence their entitlement to their claimed damages," and "[w]hether the parties are entitled to future damages." Thomas suggests that the damages awarded to Tennison Brothers and Clear Channel in this case were impermissibly based on speculation or guesswork. According to Thomas, "The present matter is a textbook example of when the existence of damages is uncertain[.]" Thomas argues that we cannot be certain that *any* profits would have been realized from the proposed billboard during the twenty-year lease. Regarding "future damages," Thomas contends that Clear Channel and Tennison Brothers were required to prove with certainty that they would *never* be able to construct their billboard for the remainder of the twenty-year lease, which, he claims, would require "affirmative evidence" proving that CBS Outdoor will not decide to remove its billboard or cede the local permit to Clear Channel during that time.

In general, the *existence* of damages cannot be uncertain, speculative, or remote, but the *amount* of damages may be uncertain if the plaintiff lays a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 (Tenn. 2008) *overruled on other grounds by Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015). In other words, uncertain or speculative damages are prohibited when the existence of damages is uncertain, not the amount. *White v. Johnson*, 522 S.W.3d 417, 423 (Tenn. Ct. App. 2016). "[T]he amount of future damages is necessarily 'speculative and imprecise' to some degree." *Rye*, 477 S.W.3d at 286 (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 704 (Tenn. Ct. App. 1999)).

For a claim of statutory inducement to breach a contract, Tennessee Code Annotated section 47-50-109 requires a calculation of "the amount of damages resulting from or incident to the breach of the contract." As we said in *Tennison I*, "'[o]ne who is liable to another for interference with a contract or prospective contractual relation is liable for damages for [] the pecuniary loss of the benefits of the contract[.]'" *Tennison I*, 2014 WL 3845122, at *15 (quoting *Dorsett*, 734 S.W.2d at 322).[22] "Where the injury involved is interference with a business relationship, the plaintiff's loss of profits that result from the wrongful act are a proper item to be included in the measure of damages." *Dorsett*, 734 S.W.2d at 324. In this calculation, "generally the lost profit element of damage must be measured by the loss sustained by the plaintiff's business." *Id.* at 325.

Thomas cites *Hannan* for the notion that "no recovery is available for loss of profits when it is uncertain whether any profits would have been made." *Hannan*, 270 S.W.3d at 10. However, "an injured party may recover lost anticipated profits when their nature and occurrence have been established with reasonable certainty." *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 58 (Tenn. Ct. App. 2004) (citing *Baker v. Hooper*, 50 S.W.3d 463, 470 (Tenn. Ct. App. 2001); *Tire Shredders, Inc. v. ERM–North Cent., Inc.*, 15 S.W.3d 849, 857 (Tenn. Ct. App. 1999); 1 *Recovery Of Damages For Lost Profits* § 1.4, at 9). This "reasonable certainty" standard applies to evidence regarding the *existence* of damages. *Id.* It is a flexible standard allowing courts to take the particular facts of each case into consideration. *Id.* (citing *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)). "The existence of damages has been proven with reasonable certainty when the mind of a prudently impartial person is satisfied that the injured party has been damaged." *Id.* (citing *Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc.*, 832 So.2d 147, 153 (Fla. Dist. Ct. App. 2002); *Welch v. U.S. Bancorp Realty & Mortgage Trust*, 286 Or. 673, 596 P.2d 947, 963 (1979)).

Less certainty is required with regard to the *amount* of damages. *Id.* "Once an injured party proves that it has been damaged, the amount of the damages need not be proved with certainty or mathematical precision." *Id.* (citing *McClain v. Kimbrough*

---

[22]*Dorsett* was decided in 1987 and involved damages for a claim of statutory inducement to breach a contract. *Dorsett*, 734 S.W.2d at 324. In 2002, the Tennessee Supreme Court adopted the tort of intentional interference with business relationships. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). Since then, the *Dorsett* measure of damages for "[o]ne who is liable to another for interference with a contract or prospective contractual relation" has also been applied to claims for intentional interference with business relationships. *See, e.g.*, *Springfield Investments., LLC v. Glob. Investments, LLC*, No. E2014-01703-COA-R3-CV, 2015 WL 5064090, at *17 (Tenn. Ct. App. Aug. 27, 2015) (*no perm. app. filed*).

*Constr. Co.*, 806 S.W.2d 194, 200 (Tenn. Ct. App. 1990)). The amount of lost profit damages awarded "may be based on estimates." *Id.* (citing *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003); *Sostchin v. Doll Enters., Inc.*, 847 So.2d 1123, 1128 (Fla. Dist. Ct. App. 2003)). Of course, definite proof regarding the amount of damages is desirable as far as reasonably possible, but "it is even more desirable that an injured party not be deprived of compensation merely because it cannot prove the extent of the harm suffered with complete certainty." *Id.* (citing *Restatement (Second) of Torts* § 912 cmt. a (1979)).

Tennison Brothers had an existing twenty-year lease agreement with Clear Channel whereby it would have received annual rent of $15,600, with a three percent increase each year thereafter, once the proposed billboard was constructed. As Clear Channel was unable to construct the billboard, the existence of damages for Tennison Brothers was reasonably certain. Tennison Brothers also provided sufficient evidence to calculate the amount of its damages based on the annual rent payments it would have received pursuant to the lease.

The existence of damages for Clear Channel was also sufficiently established with reasonable certainty. Clear Channel's real estate manager testified at the writ of inquiry hearing that the Tennison Brothers property, located at the junction of Interstate 40 and Interstate 240, was a prime location for a billboard. He said on a scale of one to ten, this was "a 10 location." He testified that Clear Channel constructed five digital billboards in Memphis in 2007 and that the Tennison Brothers site was also slated for a digital billboard. Clear Channel's real estate manager testified that Clear Channel had advertising contracts in place for the digital display, which were "a hot product in the outdoor advertising industry." This evidence sufficiently demonstrates that Clear Channel has been damaged by its inability to construct the billboard. Had Thomas not interfered, Clear Channel would have constructed its digital billboard at the Tennison Brothers site and earned substantial profits over the term of the twenty-year lease.

Considering data from other billboards, Clear Channel's expert valuation analyst projected that Clear Channel lost $6,200 per month in lost net profits. Even though the calculation of lost profits necessarily entailed some uncertainty, we conclude that Clear Channel provided a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages. *See Waggoner Motors*, 159 S.W.3d at 58 ("The amount of lost profits damages may be based on estimates."). We find no support for Thomas's assertion that Clear Channel was required to somehow affirmatively prove, "definitively," that CBS Outdoor would never surrender its local permit to enable Clear

Channel to construct a billboard during the remainder of the lease term. "[D]efendants should not be permitted to complain about the lack of exactness or precision in the proof regarding the amount of damages when their wrongdoing created the damages in the first place." *Id.* "Since lost profits can rarely be computed down to the last penny, the evidence needed to support an award for lost profits need only provide a reasonable or rational basis for calculating what the lost profits would have been." *Id.* at 59 (citing 1 *Recovery Of Damages For Lost Profits* § 5.5, at 391). Nothing in the record suggests that Clear Channel would be able to construct its billboard during the remainder of the twenty year lease. By the time damages were awarded in 2016, most of the twenty year lease term, which commenced in 2004, had already passed. And, as Thomas himself stated before the trial court, "what would be CBS Outdoor's incentive to now remove its billboard and cede its local permit to a business competitor like Clear Channel? . . . [I]t is no mystery as to why CBS Outdoor has not voluntarily surrendered its local permits; it is a matter of business."

On appeal, Thomas also argues that damages should not have been calculated based on profits for a *digital* billboard because Clear Channel never applied for a digital billboard permit. However, Clear Channel's real estate manager testified that when this matter arose in 2004, TDOT did not require a specific type of permit differentiating between a digital or traditional vinyl billboard. He testified that Clear Channel planned to construct a digital billboard at the Tennison Brothers property when the other digital billboards were constructed in 2007, and TDOT did not begin requiring a special permit for digital boards until after 2007. Accordingly, the lack of a digital billboard permit should not impact Clear Channel's ability to calculate damages based on a digital billboard.[23]

In summary, material evidence supports the concurrent finding of the special master and the chancellor regarding the calculation of the parties' damages in this case.

---

[23]Thomas also suggests that Clear Channel's damages should not be based on a *dual-sided* digital billboard. However, he cites to no location in the voluminous record to demonstrate that damages were in fact calculated based on a dual-sided digital billboard. To the contrary, Clear Channel's expert witness testified during his deposition that unlike the other ten billboards he was using for comparison, this board "was to be a dual panel digital board," but, he added, "*I have not made a specific calculation for any doubling of revenue* in terms of attempting to measure lost profits rather, thinking that any incremental revenue would add an element of conservatism to the estimate of lost net profits." (Emphasis added.)

Notably, aside from these narrow issues, Thomas does not otherwise challenge the expert's method of calculating lost net profits or argue that damages should not have been calculated based on lost net profits.

### 3. Mitigation

Next, Thomas argues that Tennison Brothers and Clear Channel failed to mitigate their damages. The special master noted caselaw suggesting that "in a case of this nature," mitigation of damages is not an appropriate consideration. In *Howard v. Haven*, 281 S.W.2d 480, 486 (Tenn. 1955), the Tennessee Supreme Court recognized that the statutory action for procurement of breach of contract contains "no provision in the law authorizing any mitigation of the penalty imposed upon the wrongdoer." In fact, the court said that a mitigation requirement "would be contradictory of the manifest purpose of the statute." *Id.* "[I]t is a strange paradox that the defendant who has, in wilful violation of law, deprived the complainant of the fruits of his contract, should now claim the right to be exonerated at the hands of the very person he has defrauded." *Id.* After acknowledging this caselaw, however, the special master found that Thomas's argument regarding mitigation was meritless in any event. The special master noted that the burden of proving that a plaintiff failed to mitigate damages is on the defendant, and nothing in the record supported a finding that either Tennison Brothers or Clear Channel failed to mitigate their damages.

We likewise conclude that Thomas's argument regarding mitigation is meritless. According to *Howard v. Haven*, mitigation of damages is not a consideration for a claim of statutory inducement to breach a contract. *Id.* at 486. Both Tennison Brothers and Clear Channel elected to receive treble damages for this statutory claim. We discern no merit in Thomas's argument that mitigation somehow became relevant to the damage award due to the fact that the parties alternatively asserted claims for intentional interference with business relationships or common law inducement to breach a contract. All of the causes of action asserted by the plaintiffs sought damages based on their inability to construct the billboard. The damages claimed for each theory of recovery overlapped, but the plaintiffs were entitled to only one recovery.[24] *See Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 237-38 (Tenn. Ct. App. 1998). They elected to receive treble damages pursuant to the statutory action, for which mitigation of damages is not an issue.

In any event, we also concur in the finding of the special master and chancellor

---

[24]Some debate has arisen as to whether a party can assert a claim for intentional interference with business relationships in cases involving a formal contract. *See Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391, at *6-7 (Tenn. Ct. App. Jan. 26, 2017) (*no perm. app. filed*). In this case, the plaintiffs pursued both intentional interference with business relationships and inducement to breach a contract and obtained a default judgment as to both claims. It is not necessary for purposes of this opinion to decide whether a party should be permitted to pursue both claims because the default judgment was an admission of the causes of action.

that Thomas failed to prove that the damages alleged could have been mitigated by the plaintiffs. Thomas suggests that Clear Channel could have built its billboard when it finally received the TDOT permit around 2011, but at the same time, he acknowledges that Clear Channel did not have and could not acquire the local permit to do so. Alternatively, Thomas argues that Tennison Brothers could have mitigated its damages by insisting, when it settled its claims against CBS Outdoor, that CBS Outdoor give up the local permit. He does not explain, however, how Tennison Brothers could have forced CBS Outdoor to do so. Thomas has not demonstrated that he is entitled to relief with regard to this issue.

#### 4. Treble or Punitive Damages

Next, Thomas argues that neither plaintiff demonstrated an entitlement to either punitive or treble damages. Both plaintiffs elected treble damages, so there is no need for us to consider Thomas's argument regarding punitive damages. With regard to the recovery of treble damages, Thomas argues that Clear Channel cannot recover treble damages in this case because its complaint did not include a claim for *statutory* inducement to breach a contract. This particular argument is different than Thomas's previous arguments about whether the complaints stated a claim for each of the causes of action. Here, he argues that Clear Channel's complaint did not even allege statutory inducement to breach a contract. This is an issue appropriate for review on appeal. *See, e.g.*, *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 439 (Tenn. 2012) ("Plaintiffs cannot extend the default judgment to matters outside the issues raised in the pleadings.").

Tennessee Rule of Civil Procedure 54.03 states that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." The policy behind this rule is that

> [i]t would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Holder v. Drake*, 908 S.W.2d 393, 395 (Tenn. 1995) (quoting *Qualls v. Qualls*, 589 S.W.2d 906, 910 (Tenn. 1979)). For instance, in *Qualls*, the court held that a default judgment could not award alimony where the complaint contained no allegation or prayer with respect to alimony. *Qualls*, 589 S.W.2d at 910.

In the case at bar, Clear Channel's cross-complaint against Thomas set forth a

claim for intentional interference with business relations but also alleged that Thomas's tortious interference "procured a breach or violation of [Clear Channel's] contract with Tennison Brothers thus entitling [Clear Channel] to treble damages." (As Thomas acknowledges in his brief on appeal, treble damages "are uniquely recoverable under the statutory claim for procurement of a breach of contract only."). As we noted in *Tennison I*, Clear Channel basically "relie[d] upon the facts averred in connection with the [claim of] intentional interference with business relationships to also support its claim for damages based upon Mr. Thomas's alleged interference with contract." *Tennison I*, 2014 WL 3845122, at *14. In the ad damnum clause of the complaint, Clear Channel specifically requested to "be awarded treble damages in accordance with Tenn. Code Ann. § 47-50-109[.]" Although the complaint could have been drafted in a clearer manner, we conclude that it sufficiently included a claim for statutory inducement to breach a contract pursuant to Tennessee Code Annotated section 47-50-109. It put Thomas on notice that Clear Channel was seeking treble damages pursuant to section 47-50-109 because Thomas allegedly procured a breach or violation of Clear Channel's contract.[25]

Thomas also argues that the trial court's treble damage award impermissibly resulted in a double recovery for a single injury. Thomas relies on the following language from *Dorsett*:

> In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.

*Dorsett*, 734 S.W.2d at 325 (quoting *Restatement (Second) of Torts* § 774A). However, this language does not entitle Thomas to relief in this case. The key language is in the latter phrase – "any damages in fact paid."

The damages recoverable for the pecuniary loss of a contract "are common to both the action for breach and the action for inducement." *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 172 (Tenn. Ct. App. 1987). Accordingly, "any payments made by the one who breaches the contract must be credited in favor of the one who induced the breach." *Id.* For example, in *Reinhart v. Knight*, No. M2004-02828-COA-R3-CV, 2005 WL

---

[25]Alternatively, Thomas argues on appeal that Clear Channel is not the proper party to assert a claim for statutory inducement to breach a contract because it is the party who allegedly breached that contract. Again, however, this type of argument, seeking to defeat the cause of action, is not one that we can consider on appeal after the entry of a default judgment admitting the existence of the cause of action.

3273072, at *2 (Tenn. Ct. App. Dec. 2, 2005), this Court considered whether a plaintiff was entitled to recover the full amount of a judgment for breach of contract from one defendant and the full amount of a judgment for statutory treble damages for procurement of breach of the same contract from another defendant. In other words, we considered whether the defendant who is liable for statutory treble damages for procuring a breach of contract is entitled to an offset in the amount paid by a co-defendant in satisfaction of a judgment for breach of contract. *Id.* at *1. We concluded that an offset was appropriate:

> [T]he treble damages award made pursuant to a statutory cause of action for procurement of breach of contract includes an element of pecuniary compensatory damages for the breach. Consequently, to avoid a double recovery for a single injury, to the extent *a payment made* by a defendant for pecuniary loss due to contract breach overlaps a judgment for procurement of the breach, the procuring defendant is entitled to an offsetting credit in the amount paid by the breaching defendant.

*Id.* at *5 (emphasis added). However, we also explained:

> The fact that the plaintiff *may have a cause of action* against the person who has broken his contract *does not prevent recovery* against the defendant who has induced or otherwise caused the breach, or reduce the damages recoverable from him. . . . Even a judgment obtained for breach of the contract if it is not satisfied does not bar or reduce recovery from the one who has caused the breach. But since the damages recoverable for breach of the contract are common to the actions against both, any *payments made* by the one who breaks the contract or partial satisfaction of the judgment against him must be credited in favor of the defendant who has caused the breach.
>
> Conversely, an action or judgment against the one who causes the breach without satisfaction will not bar or reduce recovery from the one who breaks the contract; but to the extent that there is duplication of the damages any payments made by the tortfeasor must be credited in favor of one who has broken the contract.

*Reinhart*, 2005 WL 3273072, at *4-5 (quoting *Restatement (2d) of Torts* § 774A, comment e) (emphasis ours).

Based on this language, the fact that a plaintiff may have a potential cause of action against another for breach of contract does not bar recovery against the one who

induced or caused the breach, nor does it reduce the damages recoverable from him. In this case, neither plaintiff has obtained a judgment for breach of contract damages or received payments in satisfaction of such a judgment. Thomas is not entitled to any credit because there have been no "damages in fact paid" based on breach of contract. *Dorsett*, 734 S.W.2d at 325.

## E.    *Deposition Testimony*

Next, Thomas argues that the trial court erred in striking deposition testimony of TDOT employees that he sought to introduce in order to prove that "the parties' claims are false as a matter of law." Thomas claims that this deposition testimony would show that the billboard he constructed does not in fact interfere with Clear Channel's ability to obtain a TDOT permit. The referenced deposition testimony was obtained in the context of a separate lawsuit. Thomas sought to introduce the deposition testimony on remand, after the hearing before the chancellor to consider the special master's report but before the written order was entered awarding damages. Thomas attached the deposition transcripts to objections he filed regarding proposed findings of fact and conclusions of law. The trial court granted Clear Channel's motion to strike these exhibits from the record, as the exhibits did not go to the issue remaining before the court and were beyond the scope of the determination of damages. We discern no error in the trial court's decision. At that point in the litigation, Thomas's liability had already been established by the entry of default judgment, and a previous order prevented Thomas from submitting proof related to damages. As such, the trial court was justified in refusing to consider the deposition testimony.

## F.    *Constitutionality of the Tennessee Billboard Act*

For his final issue, Thomas asks: "[w]hat impact does the Tennessee Billboard Act having been declared unconstitutional have on the present matter." The ruling that Thomas references was issued by a federal district court in another case involving Thomas. In *Thomas v. Schroer*, 248 F.Supp.3d 868, 877-78 (W.D. Tenn. 2017), Thomas argued that TDOT violated his First Amendment rights when it sought to remove a *noncommercial* billboard Thomas owned, which displayed an American flag, pursuant to the Billboard Regulation and Control Act ("Billboard Act"), Tennessee Code Annotated §§ 54-21-101, et seq. The district court concluded that the Billboard Act was "a content-based regulation that implicates Thomas's noncommercial speech," and therefore, it was subject to strict scrutiny. *Id.* at 878. The district court ultimately concluded that the Billboard Act did not survive strict scrutiny, and therefore, it ruled that the Billboard Act is unconstitutional. The court added,

[I]f it were clear from the face of the statute that the Tennessee legislature would have enacted the Billboard Act with the unconstitutional on-premises/off-premises distinction omitted, the Court could sever the unconstitutional provisions while the Billboard Act's constitutional provisions stay in effect. . . . The Court, however, is unpersuaded that the Billboard Act, as written, is severable in this manner.

*Id.* at 895 n.12.

On appeal, Thomas argues that any issues or arguments regarding the alleged illegality of his billboard are now moot. He claims that the district court's ruling eliminates all of his past and future liability in this case because the Billboard Act was "unconstitutional ab initio," the billboard he constructed "was thus legal at all times," the plaintiffs "could have" constructed their billboards if they wanted to do so, and the plaintiffs "could never have sustained their causes of action." Thomas argues that because of the district court's ruling regarding unconstitutionality, the parties' complaints in this case failed to state a cause of action as a matter of law.

Once again, we conclude that Thomas cannot pursue this argument on appeal due to the entry of default judgment against him. Because the default judgment established Thomas's liability for the causes of action asserted, he cannot continue to litigate the legality of his billboard or whether his actions actually prevented Clear Channel from constructing its billboard. The default judgment conclusively established Thomas's liability, admitting that his interference with the contract between Tennison Brothers and Clear Channel resulted in their inability to construct a billboard.[26]

Thomas claims that the district court's ruling regarding constitutionality renders the plaintiffs unable "to recoup under said unconstitutional provisions" in the future. However, the plaintiffs in this case are not attempting to "recoup" under the Billboard Act. They are entitled to damages for the tort claims set forth in their complaints, for which they obtained a default judgment.

Thomas also suggests in his brief that "this Honorable Court must conclude that the provisions of the Billboard Act under which Appellees claims for damages are founded are in fact unconstitutional." However, Thomas presents no argument substantively analyzing the constitutionality of the Act for purposes of this appeal, and he did not notify the Attorney General of his intention to challenge the constitutionality of

---

[26]Furthermore, Thomas admits that aside from any issues regarding the TDOT permit, Clear Channel will never be able to build its billboard as long as CBS Outdoor continues to hold the local permit that was transferred to it by Thomas.

37

the Act in this appeal. As a result, to the extent that Thomas attempts to raise a constitutional challenge in the context of this appeal, his argument is waived. Before we can consider an attack on the constitutionality of a statute, the record must reflect compliance with Tennessee Rule of Civil Procedure 24.04, Tennessee Rule of Appellate Procedure 32, and Tennessee Code Annotated section 29-14-107(b), which all require that notice be provided to the Attorney General. *See, e.g.*, *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *7 (Tenn. Ct. App. Oct. 5, 2016), *perm. app. denied* (Tenn. Feb. 21, 2017).

Thomas also suggests in his brief that the trial court erred in denying a "motion to determine the real party of interest," which he filed shortly before the final order was entered in this case. However, the twelve issues Thomas raised on appeal did not mention this ruling or suggest that it was erroneous. "[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). "'An item not listed as an issue presented for review is considered waived as this Court is under no obligation to search for, or derive, issues that are not specifically stated in accordance with Rule 27(a)(4).'" *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, No. W2012-01611-COA-R3-CV, 2013 WL 3806345, at *5 n.3 (Tenn. Ct. App. July 18, 2013) (quoting *Coleman v. Lauderdale Cnty.*, No. W2011-00602-COA-R3-CV, 2012 WL 475606, at *3 n.4 (Tenn. Ct. App. Feb. 15, 2012). Similarly, the issues Thomas attempts to raise for the first time in his reply brief are waived. Issues cannot be raised for the first time in a reply brief. *See Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues.").

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, William H. Thomas, Jr., and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE