IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2025 Session

## DANIEL H. RADER IV EX REL. ESTATE OF CHRISTINE JOY KOCZWARA v. JOHN BEASLEY

**Appeal from the Chancery Court for Putnam County**
**No. 2020-CV-183   Ronald Thurman, Chancellor**

_____

### No. M2024-00069-COA-R3-CV
_____

This is an action for abuse or neglect, exploitation, or theft of money or property of Christine Joy Koczwara during her life, as provided by Tennessee Code Annotated § 71-6-120(b) of the Tennessee Adult Protection Act. The complaint seeks to recover assets as well as compensatory and punitive damages. After the defendant failed to file a timely responsive pleading to the complaint, the trial court entered a default judgment on the issue of liability. Prior to the trial on damages, the defendant moved to set aside the default judgment on the ground of excusable neglect. The claimed excuse was based on the contention that the defendant was the named executor and sole beneficiary under a purported 2020 will. The trial court rejected that argument because there was no pending will contest and the defendant had not filed a petition to admit the purported will to probate. The trial court also denied the motion to set aside upon the finding that the defendant's failure to file a responsive pleading was willful. After a trial on damages, the court invalidated a quitclaim deed, ordered the return of personal property, and awarded $48,500 in compensatory damages and $97,000 in punitive damages against the defendant. The court also ordered the sale of the decedent's real property. This appeal followed. We affirm in part and vacate in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Vacated in Part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellant, John Beasley.

Daniel H. Rader IV, Cookeville, Tennessee, as personal representative for the appellee, the Estate of Christine Joy Koczwara.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The decedent, Christine Joy Koczwara,[1] was a well-known artist, teacher, and resident of Putnam County, Tennessee. Before her death in November 2020, Ms. Koczwara executed two documents, each of which is purported to be her last will and testament. The earlier document was executed in 2016 ("the 2016 Will") and the later in 2020 ("the 2020 Will").

The 2016 Will leaves most of Ms. Koczwara's estate to a local animal shelter, and it names Daniel H. Rader III[2] ("Mr. Rader") as executor. In contrast, the 2020 Will, if admitted to probate, would leave the entirety of Ms. Koczwara's estate to an acquaintance, John Beasley ("Mr. Beasley"), and would name Mr. Beasley as executor.

In December 2020—one month after Ms. Koczwara died—Mr. Rader filed a petition in the Probate Court for Putnam County, Tennessee, to admit the 2016 Will to probate.[3] Mr. Beasley responded to Mr. Rader's petition by filing "a copy" of the purported 2020 Will with the Probate Court. Significantly, however, Mr. Beasley did not file a petition to admit the 2020 Will to probate or to contest the 2016 Will.

The Probate Court granted Mr. Rader's petition and admitted the 2016 Will to probate, and Letters Testamentary were issued to Daniel H. Rader III as the executor of Ms. Koczwara's estate ("the Estate"). After being appointed as the Estate's executor, Mr. Rader discovered that Mr. Beasley was living in Ms. Koczwara's house and appeared to be disposing of her personal property. Mr. Rader also discovered that Ms. Koczwara had executed a quitclaim deed that purportedly conveyed a remainder interest in Ms. Koczwara's real estate to Mr. Beasley.

Shortly thereafter, on December 3, 2020, Mr. Rader commenced this action by filing a petition ("the Petition") on behalf of the Estate to recover assets as well as compensatory and punitive damages from Mr. Beasley under the Tennessee Adult Protection Act, Tenn.

---

[1] Ms. Koczwara's surname is pronounced "CAUSE-wah-rah."

[2] Daniel H. Rader III is the named executor. His son, Daniel H. Rader IV, is the executor's attorney of record in this action.

[3] The Putnam County probate case was assigned Docket Number 2020-PR-20599.

Code Ann. § 71-6-101 to -120.[4] The Petition alleged, *inter alia*, that Mr. Beasley befriended Ms. Koczwara, moved into her house, plied her with alcohol, procured the quitclaim deed, and converted Ms. Koczwara's funds. Mr. Rader also sought a declaration that "any instrument conveying any interest in money or property to Defendant" was "void and unenforceable." Although Mr. Beasley was served with a copy of the Petition and a summons, he did not file an answer or a responsive pleading for over a year.

Mr. Rader also filed a Motion for an Ex Parte Temporary Restraining Order under Tennessee Rule of Civil Procedure 65.03 to prevent Mr. Beasley from being in or around Ms. Koczwara's house or removing Ms. Koczwara's personal property. The trial court granted the Motion, and the restraining order was issued on December 3, 2020.

No further filings were made until October 2021, when the trial court set the case for a status hearing on December 6, 2021.

Shortly before the hearing, Mr. Rader filed a Motion for Default pursuant to Tennessee Rule of Civil Procedure 55. The Motion for Default alleged that a default judgment was warranted because Mr. Beasley had filed no responsive pleading. After hearing from counsel,[5] the trial court docketed the Motion for Default for a hearing on December 17, 2021.

On December 16, 2021, one day before the hearing on the Motion for Default, Mr. Beasley filed a belated answer to the Petition in this action. The following day, when the Motion for Default came on for hearing, neither Mr. Beasley nor his counsel appeared. Nevertheless, because Mr. Beasley's counsel had called the chancellor's office that morning and asked for a continuance for personal reasons, the court continued the hearing to May 20, 2022. Meanwhile, Mr. Beasley obtained new counsel.[6]

Shortly before the May 20 hearing on Mr. Rader's Motion for Default, Mr. Beasley filed a Motion to Dismiss and a Motion for Summary Judgment. In both motions, Mr. Beasley asserted that Mr. Rader lacked standing to maintain the present action because, according to Mr. Beasley, the 2020 Will superseded the 2016 Will and named Mr. Beasley—not Mr. Rader—as executor of the Estate. Although no petition had been filed to admit the 2020 Will to probate, Mr. Beasley contemporaneously filed an affidavit from the

---

[4] As stated in the chancery court complaint, "This complaint is a suit for abuse or neglect; exploitation; or for theft of money or property of Christine Joy Koczwara during her life, as provided by T.C.A. § 71-6-120(b)."

[5] Both parties were represented by counsel at the December 6, 2021 status hearing.

[6] Mr. Beasley was initially represented by Edwin John "E.J." Mackie. Following Mr. Mackie's withdrawal, Mr. Beasley retained Henry D. Fincher.

attorney who drafted the 2020 Will, William F. Roberson, Jr., an affidavit from one of the witnesses to the 2020 Will, and his own affidavit, all in support of the purported 2020 Will. Mr. Beasley also filed a response to the Motion for Default, arguing that a default judgment was inappropriate because he had appeared in the action, responded to the Petition, and filed two dispositive motions.

Then, on May 20, 2022, after hearing from counsel at the rescheduled hearing, the trial court found that Mr. Beasley had articulated neither good cause nor excusable neglect for his failure to answer the Petition for over a year. Accordingly, the court granted the Motion for Default and reserved the issue of damages for the final hearing.

On June 6, 2022, Mr. Beasley filed a Motion to Set Aside the Default Judgment. Mr. Beasley supported his Motion to Set Aside with an affidavit from his previous counsel, Edwin John "E.J." Mackie. Mr. Mackie asserted that he filed a "substantive response" to the Petition in this action by filing the purported 2020 Will in the Probate Court. According to Mr. Mackie, the 2020 Will revoked the 2016 Will and "answer[ed] all of the allegations in the Chancery Court Petition." Thus, as stated in Mr. Mackie's affidavit, he "thought that perhaps [the Estate] would simply acknowledge the 2020 Will and give up." Upon agreement of the parties, the trial court continued the trial to October 2023.

But in July 2023, Mr. Beasley asked the trial court to continue the trial a second time because discovery had not been completed and, he contended, because the 2016 Will was being contested in the Probate Court. After the trial was rescheduled, Mr. Beasley moved a third time to continue the trial on the same grounds as before.

On September 29, 2023, after a hearing on all pending motions, the trial court denied Mr. Beasley's Motion to Dismiss, Motion for Summary Judgment, Motion to Set Aside, and Motions to Continue. The court denied Mr. Beasley's Motion to Dismiss and Motion for Summary Judgment because the 2020 Will had never been admitted to probate; thus, Mr. Rader had standing to maintain the action as the Estate's court-appointed personal representative. The court also held that the Motion for Summary Judgment was moot due to the Default Judgment. As for Mr. Beasley's request to revise the Default Judgment, the court held that Mr. Beasley had no right to relief because his failure to answer the Petition was a willful choice made by Mr. Mackie, Mr. Beasley's previous counsel. And the court denied Mr. Beasley's motions to continue because the case had been pending for three years and the trial had already been continued.

The trial on Mr. Rader's petition against Mr. Beasley was held on October 11, 2023. While Mr. Beasley's counsel attended and participated, Mr. Beasley did not attend the trial. For his case-in-chief, Mr. Rader introduced documents related to the transactions for which he was seeking relief on behalf of the Estate. Those documents included six checks written from Ms. Koczwara's bank account between November 2019 and April 2020. Four were payable to Mr. Beasley, one was payable to "cash," and one was payable to one of Mr. Beasley's friends. The documents also showed that $42,000 was wired from Ms.

- 4 -

Koczwara's bank account to Mr. Beasley's investment account in January 2020. In addition, Mr. Rader submitted the quitclaim deed that purportedly conveyed Ms. Koczwara's real estate to Mr. Beasley.

Counsel for Mr. Beasley then filed a Motion for Directed Verdict, arguing that Mr. Rader failed to produce evidence of causation, i.e., did not show that Mr. Beasley's undue influence was the but-for cause of these transactions. In response, Mr. Rader argued that Mr. Beasley's culpability was established by the Default Judgment. The trial court agreed with Mr. Rader and denied the Motion.

Counsel for Mr. Beasley[7] then announced that he would be offering into evidence a copy of the 2020 Will and presenting three witnesses, including Mr. Roberson, the attorney who drafted the 2020 Will. Mr. Beasley said this evidence would show that the 2020 Will was properly executed and that Ms. Koczwara wanted her estate to go to Mr. Beasley. Mr. Rader timely objected on the ground that the evidence was irrelevant given the Default Judgment. Mr. Rader also argued that Mr. Roberson's testimony was barred by the attorney-client privilege. The trial court agreed for both reasons, but it let Mr. Beasley present his evidence as an offer of proof.

After counsel for Mr. Beasley concluded his presentation of proof, Mr. Rader asked the court to apply the missing-witness rule to Mr. Beasley, who did not appear for the trial. Mr. Rader asserted that the rule would allow the court to infer that Mr. Beasley's testimony would be unfavorable to his case.

In its final judgment, the court granted the Estate's request to invoke the missing-witness rule, applying "a permissible inference . . . that Mr. Beasley's testimony would be unfavorable to his case." The court also ruled, relying in part on the Default Judgment, that the quitclaim deed was void because Mr. Beasley procured it "by undue influence and as a result of elder abuse." Likewise, the court found that Mr. Beasley procured the 2020 Will and obtained funds from Ms. Koczwara by elder abuse and undue influence. As stated in the final order:

> The Court also finds that a purported 2020 will, which was also made an exhibit in this matter, but which has never been admitted to probate, was also procured by undue influence and elder abuse and such instrument should be declared void as procured by fraud. The Court further finds from the undisputed proof that that [sic] Christine Koczwara maintained a substantial balance in her banking accounts, and shortly after Defendant became involved, Ms. Koczwara's funds were dissipated around the same time as the

---

[7] We specifically note that it was counsel for Mr. Beasley who took these actions, not Mr. Beasley himself, because Mr. Beasley did not appear or otherwise participate in the trial.

deed and shortly thereafter. The Court specifically finds that the . . . financial transactions were procured by undue influence, elder abuse, and conversion, and inured to the benefit of Defendant[.]

Based on these and other findings, the court awarded the Estate compensatory damages in the amount of $48,500 and punitive damages in the amount of $97,000. Regarding the award of punitive damages, the order reads:

The Court has considered the factors in T.C.A. § 29-39-104, and the prior caselaw including *Hodges v. S. C. Toof.* The Court finds that the standard is clear and convincing evidence, and the Court does find clear and convincing evidence of elder abuse, undue influence, and conversion, and that the conduct of the Defendant was intentional, and primarily malicious and fraudulent, and that an award of punitive damages in the amount of $97,000, which is two times the amount of financial compensatory damages, is appropriate.

The court also awarded the Estate "all of the contents and furnishings at the house at the time of Ms. Koczwara's death," including artwork and personal property. Finally, the court ordered the sale of Ms. Koczwara's house and lot at 725 Fisk Road in Cookeville, Tennessee.[8]

This appeal followed.[9]

## ISSUES

Mr. Beasley raises twenty-four issues on appeal, which we have consolidated as follows:

1. Whether the trial court erred by granting Mr. Rader's Motion for Default Judgment and denying Mr. Beasley's Motion to Set Aside.

---

[8] The court ordered the sale of Ms. Koczwara's real estate within 120 days of October 11, 2023. In its Order of March 26, 2024, the trial court granted Mr. Beasley's Motion for Stay of the Judgment contingent on him posting of a bond. It is unclear from the appellate record whether he posted a bond. At oral argument, counsel disclosed that Mr. Beasley was still living in Ms. Koczwara's house.

[9] On November 14, 2023, Mr. Beasley filed a Motion to Alter or Amend the Final Judgment. A hearing was docketed for a hearing one week later, but neither Mr. Beasley nor his attorney appeared. Consequently, the court denied the Motion.

2. Whether the trial court erred by denying Mr. Beasley's Motion for Summary Judgment and Motion to Dismiss based on Mr. Rader's alleged lack of standing.

3. Whether the trial court erred by denying Mr. Beasley's motions to continue the trial.

4. Whether the trial court erred at trial by denying Mr. Beasley's Motion for Directed Verdict and excluding Mr. Beasley's evidence.

5. Whether the trial court erred in its final judgment by applying the missing-witness rule, declaring the 2020 will void, and ordering the sale of Ms. Koczwara's real estate.

**ANALYSIS**

**I. DEFAULT JUDGMENT**

Mr. Beasley contends that all the trial court's errors flowed from its erroneous decision to grant Mr. Rader's Motion for Default and deny Mr. Beasley's Motion to Set Aside. Specifically, Mr. Beasley argues that the court erred in finding that his failure to file an answer in a timely manner was willful.

"[D]efault judgments are not favored under Tennessee law, [and] our courts construe requests to set aside a judgment 'much more liberally in cases involving a default judgment than in cases following a trial on the merits.'" *Youree v. Recovery House of E. Tennessee, LLC*, 705 S.W.3d 193, 203 (Tenn. 2025) (quoting *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003)). Moreover, "[w]hile the same factors must guide the inquiry, relief from a partial default judgment may be granted more liberally under Rule 54.02 than relief from final default judgments under Rule 59.04 or Rule 60.02." *Discover Bank v. Morgan*, 363 S.W.3d 479, 494 (Tenn. 2012). Thus, nonfinal default judgments should be set aside "if there is reasonable doubt as to the justness" of entering judgment "before it can be heard on its merits." *Youree*, 705 S.W.3d at 203 (quoting *Henry*, 104 S.W.3d at 481).

When a default judgment has not become final, i.e., when it "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," relief may be sought under Tennessee Rule of Civil Procedure 54.02. *See Discover Bank*, 363 S.W.3d at 488. Relief under Rule 54.02 is available for the reasons stated in Rule 60.02, including

"mistake, inadvertence, surprise or excusable neglect." Tenn. R. Civ. Pro. 60.02.[10] Here, Mr. Beasley sought relief due to excusable neglect.[11]

**"[W]hen a party seeks relief from a default judgment due to 'excusable neglect,'" "a reviewing court must first determine whether the conduct precipitating the default was willful**." *Discover Bank*, 363 S.W.3d at 493–94 (emphasis added). **If the conduct is found to be willful, "the judgment cannot be set aside on 'excusable neglect' grounds**." *Id.* at 494 (emphasis added). However, if the court finds the conduct was not willful, "then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief." *Id*. "The court may also consider any other factor that it deems relevant." *Id*. "This approach has been to find that negligence, a form of neglect, may be excusable and to employ willfulness as a critical factor in distinguishing neglect that is excusable from that which is not." *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 886 (Tenn. Ct. App. 2009) (quoting *World Relief Corp. of Nat. Ass'n of Evangelicals v. Messay*, No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *7 n.9 (Tenn. Ct. App. July 26, 2007)).

The trial court found that Mr. Beasley's failure to file a response to the Petition for over a year, and not until the Motion for Default was filed, was willful. Thus, the court did not reach the issues of whether Mr. Beasley had a meritorious defense or whether setting aside the judgment would unduly prejudice Mr. Rader. *See Discover Bank*, 363 S.W.3d at 494 (stating that "the judgment cannot be set aside on 'excusable neglect' grounds" if the conduct is found to be willful).

---

[10] In addition, relief from a nonfinal default judgment may be granted for the same reasons that warrant relief under Rule 59.04. *See Youree*, 705 S.W.3d at 205. Under Rule 59.04, relief may be granted "when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Burris v. Burris*, 512 S.W.3d 239, 245 (Tenn. Ct. App. 2016) (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)).

[11] Mr. Beasley's Motion to Set Aside did not expressly identify "excusable neglect" as the ground on which relief was sought, but Mr. Beasley argued that the Default Judgment should be revised because his failure to file a responsive pleading was not willful, Mr. Beasley had a meritorious defense, and Mr. Rader would not be prejudiced. Thus, we construe the Motion to Set Aside as seeking relief on the ground of excusable neglect. *See Discover Bank*, 363 S.W.3d at 493–94; *see also, e.g.*, *Holley v. Holley*, 420 S.W.3d 756, 760 (Tenn. Ct. App. 2013) (reviewing courts "ultimately must look to the substance of what has been alleged" to determine what characterization an action takes); *accord In re Abigail J.J.*, No. E2019-01832-COA-R3-CV, 2021 WL 964880, at *5 (Tenn. Ct. App. Mar. 15, 2021).

After hearing arguments from counsel, the court entered an order in which it ruled as follows:

> The Court entered the order of default judgment for the reasons set forth in its prior order. The suit was filed, and the summons and complaint were served on the Defendant, who did not file an answer or any other motion for substantially a full year. After the motion for default was filed, the Defendant did not move the Court to enlarge the time to file to [sic] an answer or otherwise seek relief. Neither Defendant nor his counsel showed up for the hearing on the motion for default as originally noticed, and the motion was therefore re-noticed and heard on a later date. The Court conducted a lengthy hearing. While the Court frequently exercises its discretion not to grant a default against an unrepresented party, the Court found that Defendant was represented by counsel at all times, and that Defendant and [sic] did not file an answer for a full year.
>
> The Court has considered the Tennessee Supreme Court's case of *Discover Bank v. Morgan*, which the Court considers the main case on setting aside an order of default. The Court notes that the threshold issue is to determine whether the failure was willful. The Court finds that Defendant's failure to file an answer was willful. The rules clearly require an answer to be filed within 30 days. While the Court has discretion to enlarge that time, the Defendant never asked the Court to do so. The Court determined from a consideration of all matters, including the materials filed by Defendant, that the decision not to file an answer was a willful action or choice by Defendant, and notes Attorney Mackie's affidavit discussing his reasons for not filing an answer. The Court does not find that Attorney Mackie's conduct was carelessness or inattention or excusable neglect, and instead finds that the failure to file an answer was a deliberate choice, evidently trying to work it out or hoping it would work out. The Court also finds that Defendant's year-long failure to file an answer was the type of flagrant and unexplained conduct [that] constitutes willful conduct. For any of these reasons, the Court finds that the Defendant's failure to file an answer constituted willful conduct within the holding of *Discover Bank*.

For these reasons, the court denied Mr. Beasley's Motion to Set Aside the Default Judgment.

"A trial court's ruling on a motion to revise pursuant to Rule 54.02 will be overturned only when the trial court has abused its discretion."[12] *Harris v. Chern*, 33 S.W.3d 741, 746 (Tenn. 2000) (citing *Donnelly v. Walter*, 959 S.W.2d 166, 168 (Tenn. Ct. App. 1997)). Generally, appellate courts cannot "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen." *Graham*, 2023 WL 2496413, at *6 (quoting *Harmon*, 594 S.W.3d at 306). Thus, our courts have observed that "a trial court's discretionary choice must be affirmed if 'reasonable minds can disagree with the propriety of the decision.'" *Id.* (quoting *McCaleb*, 582 S.W.3d at 186). That standard, however, is slightly modified in the context of motions to set aside a default judgment. In particular, trial courts have **no** discretion to grant a motion to set aside a default judgment when there is a finding of willfulness. *See Discover Bank*, 363 S.W.3d at 494.

**A finding of willfulness is a finding of fact that we review under "the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d)**." *Id.* (quoting *Lee Medical, Inc.*, 312 S.W.3d at 525) (emphasis added). Thus, we will review the record to determine whether the evidence weighs against the court's willfulness finding.

---

[12] The abuse of discretion standard encompasses three considerations:

> (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The first two considerations implicate familiar standards of review: appellate courts "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d)," and we review the trial court's legal determinations "de novo without any presumption of correctness." *Id.* at 525.

The third *Lee Medical* consideration—whether the trial court's decision was within the range of acceptable alternative dispositions—involves a much more deferential standard. This is because "discretionary decisions involve a choice among acceptable alternatives." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020) (quoting *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019)).

*Graham v. UT Reg'l One Physicians Inc.*, No. W2020-01736-COA-R3-CV, 2023 WL 2496413, at *6 (Tenn. Ct. App. Mar. 14, 2023).

*See Lee Medical, Inc.*, 312 S.W.3d at 524. If not, we will conclude that the trial court properly denied the Motion.[13] *See Discover Bank*, 363 S.W.3d at 494.

To show a lack of willfulness, Mr. Beasley relied on an affidavit from Mr. Mackie, who represented Mr. Beasley in 2020 when the 2016 Will was admitted to probate and in these proceedings. Mr. Mackie stated that he was retained by Mr. Beasley to represent him in the probate proceedings in the Probate Court and in this action in the Chancery Court. To justify his actions, or lack of action in these proceedings, Mr. Mackie explained, it was "not clear which court ha[d] precedence to proceed in this matter" and "there were not clear steps to take next," i.e., there was "no clear procedure that [he] saw that would have quickly cut to the central point in this case." He also stated that he was waiting for Mr. Rader to take certain actions and, alternatively, that he hoped that Mr. Rader would concede that Mr. Beasley was the sole beneficiary of Ms. Koczwara's estate, in which event this civil action would go away. However, the trial court found no merit to these excuses. Neither do we. To the contrary, they show that the decision not to file an answer or a responsive pleading to the Petition in this action was deliberate, indeed willful.

Tennessee Rule of Civil Procedure 12.01 provides one clear action for defendants to take when served with a complaint: file a responsive pleading within thirty days. Mr. Beasley did not. The rules also provide a clear mechanism for obtaining an enlargement of time to respond. *See* Tenn. R. Civ. P. 6.02. If Mr. Beasley wished to delay the filing of an answer or responsive pleading, it was incumbent on him to seek an extension of time. Once again, he did not.

We acknowledge that the decision not to file an answer or a responsive pleading to the Petition appears to be that of Mr. Mackie, not Mr. Beasley. Nevertheless, that affords no relief to Mr. Beasley because efforts to set aside a default judgment do not circumvent the general rule that "errors of counsel are attributable to the client." *Discover Bank*, 363 S.W.3d at 493 n.26 (citing *Panesi v. Boswell*, 59 Tenn. 323, 324 (1873)). Having reviewed the record, including the affidavits Mr. Beasley relies upon, we conclude that the evidence does not preponderate against the chancellor's finding that Mr. Beasley's failure to file an answer or a responsive pleading to the Petition for over a year was willful. Therefore, we affirm the chancery court's finding of willfulness.

Thus, Mr. Beasley made a deliberate, willful choice not to file an answer or a responsive pleading to the Petition. And, as our Supreme Court has explained, parties "may not simply choose to ignore procedural requirements and later seek relief from the

---

[13] But, if the evidence preponderates against the finding of willfulness, we will consider whether there is reasonable doubt as to the justness of entering a default judgment before the case could be heard on its merits, i.e., whether Mr. Beasley had a meritorious defense and whether setting aside the Default Judgment would have prejudiced Mr. Rader. *See Discover Bank*, 363 S.W.3d at 494; *Youree*, 705 S.W.3d at 204.

inevitable consequences of their deliberate choices based on excusable neglect." *Maddux v. Bd. of Pro. Resp. of Supreme Ct.*, 409 S.W.3d 613, 623 (Tenn. 2013). Therefore, we affirm the trial court's decision to deny Mr. Beasley's Motion to Set Aside. *See Discover Bank*, 363 S.W.3d at 494 (if the conduct is found to be willful, "the judgment cannot be set aside on 'excusable neglect' grounds").

## II. MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

In his Motion to Dismiss and Motion for Summary Judgment, Mr. Beasley argued that Mr. Rader lacked standing to prosecute this action because Mr. Beasley—not Mr. Rader—was the named personal representative in the purported 2020 Will.

The personal representative of an estate is the only party who has the right to maintain a civil action to recover debts or other assets due the estate of a decedent. *See Bishop v. Young*, 780 S.W.2d 746, 750 (Tenn. Ct. App. 1989). Indeed, the personal representative of the decedent's estate has an affirmative fiduciary duty to marshal and collect the estate's assets. *See In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *5 (Tenn. Ct. App. Feb. 25, 2009) ("[T]he interest of the [personal representative of an estate] is essentially identical to that of [the decedent]; to recover assets wrongfully appropriated from the decedent prior to her death.").

Furthermore, the Tennessee Adult Protection Act creates a right of action for "elderly persons" or "disabled adults" to obtain damages for abuse, neglect, or exploitation. *See* Tenn. Code Ann. § 71-6-120(b). "Such right of action against a wrongdoer must not abate or be extinguished by the death of the elderly person or disabled adult but must pass as provided in § 20-5-106. . . ."[14] *Id*. Thus, personal representatives may assert claims for violation of the Adult Protection Act on behalf of the decedent's next of kin.

It is undisputed that the Probate Court of Putnam County admitted the 2016 Will to probate. It is also undisputed that the Probate Court appointed Mr. Rader as the executor, the personal representative of Ms. Koczwara's estate, and he continues to serve in that capacity. Thus, Mr. Rader has standing as Ms. Koczwara's personal representative to assert claims on her behalf to collect the Estate's assets and to additionally assert claims under the Adult Protection Act and Tennessee Code Annotated § 20-6-106.

Conversely, the 2020 Will, on which Mr. Beasley's arguments are based, was not admitted to probate. Indeed, no petition has ever been filed to admit the 2020 Will to

---

[14] Tennessee Code Annotated § 20-6-106, applies to wrongful death actions and provides that such actions pass to, among others, "the person's personal representative, for the benefit of the person's surviving spouse or next of kin." *Id*. § 20-6-106(a).

probate or to appoint Mr. Beasley as the executor. Thus, Mr. Beasley has never been the personal representative of Ms. Koczwara's estate.

For completeness, we note Mr. Beasley's contention that Mr. Rader, as a personal representative of the Estate, may not act in derogation of an alleged beneficiary's rights. *See Phillips v. Bass*, 45 S.W.2d 56, 58 (Tenn. 1932). We have already determined that Mr. Beasley is not a beneficiary of Ms. Koczwara's estate because the only will admitted to probate is her 2016 Will, of which he is not a beneficiary. Moreover, the right to sue under the Adult Protection Act passes to the decedent's personal representative "for the benefit of the person's surviving spouse or next of kin." Tenn. Code Ann. § 20-6-106(a). Mr. Beasley is not the personal representative of her estate, and he is not Ms. Koczwara's next of kin. Thus, his argument is unavailing.

For these reasons, we affirm the trial court's denial of Mr. Beasley's Motion for Summary Judgment and Motion to Dismiss, both of which were based on Mr. Rader's alleged lack of standing.

## III. MOTIONS TO CONTINUE

Mr. Beasley argues that the trial court erred by denying his motions to continue the trial for two reasons: (1) "the trial was held before the parties kn[e]w who w[ould] ultimately control [the E]state"; and (2) "no discovery had been performed." We have already dispensed with the first argument; in short, Mr. Rader had the right and duty to commence this action as the court-appointed executor for the Estate. And Mr. Beasley raises the second argument as an afterthought with no analysis.

This court may decline to consider an issue that is only touched on in the argument of other issues. *See In re Est. of Espey*, 729 S.W.2d 99, 103 (Tenn. Ct. App. 1986) (citing R. Tenn. Ct. App. 6; Tenn. R. App. P. 27). "As a general matter, the issues addressed by the appellate courts should be limited to those . . . which have been fully briefed and argued in the appellate courts." *Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011) (citations omitted). "A skeletal argument that is really nothing more than an assertion will not properly preserve a claim, especially when the brief presents a multitude of other arguments." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

For these reasons, we affirm the trial court's decision to deny Mr. Beasley's motions to continue.

IV. TRIAL ISSUES

Mr. Beasley argues that the trial court erred in several ways during the trial.

A. Motion for Directed Verdict

First, Mr. Beasley contends that the trial court erred by denying his Motion for Directed Verdict because Mr. Rader "offered only proof that Decedent had issued checks to [Mr. Beasley] and a third party not before the Court" without providing evidence that these transactions resulted from undue influence.

As we have recognized before, a default judgment serves as an admission "that the defendant's conduct caused the event upon which the plaintiff's suit is based" but not "that the event sued upon caused [the] plaintiff's alleged injuries." *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 720 (Tenn. Ct. App. 2017) (quoting *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984)). We explained:

> [A]t trial the plaintiff must establish two causal [n]exuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries.
>
> The causal nexus between the defendant's conduct and the event sued upon relates to the liability portion of plaintiff's cause of action. Here, **we use the term "liability" to mean legal responsibility for the event upon which suit is based. . . . It is this causal nexus between the conduct of the defendant and the event sued upon that is admitted by default. From the rule that a default judgment conclusively establishes the defendant's liability, it follows that a default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based.**
>
> . . . . The [second] causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action. Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event made the basis of suit; that the defendant has defaulted does not give the plaintiff the right to recover for damages which did not arise from his cause of action. To hold, as we do, that a defaulting defendant does not admit that the event sued upon caused [the] plaintiff's alleged injuries is entirely consistent with the rule that **a judgment taken by default admits all allegations of fact set out in the petition, except for the amount of damages.** Proving that the event sued upon caused the plaintiff's alleged injuries is part and parcel of proving the

- 14 -

amount of damages to which the plaintiff is entitled. The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence.

*Id.* at 719–20. (Emphasis added).

The events sued upon, which Mr. Beasley "procured by fraud and undue influence, and in violation of T.C.A. § 71-6-120," were the conveyance of Ms. Koczwara's real property by quitclaim deed, the transfer of funds to Mr. Beasley's investment account, and the execution of several checks made out to Mr. Beasley and his friend. As for Mr. Beasley's complicit conduct, the Petition alleged that Mr. Beasley engaged in the following: (1) Mr. Beasley "purported to befriend decedent," began "inserting himself into Ms. Koczwara's life," and "moved in on decedent," who "had an unfortunate history of abusing alcohol"; (2) Mr. Beasley knowingly "enabled and encouraged [Ms. Koczwara] in her alcohol abuse, in an attempt to cement his purported friendship"; (3) Mr. Beasley procured "a deed from [Ms. Koczwara]" for a remainder interest in her real property; (4) Mr. Beasley "accessed funds of [Ms. Koczwara], and used the same for his own gain and benefit"; and (5) Mr. Beasley "convinced the decedent, Ms. Koczwara, to change from her long-time bank, to conceal his actions with respect to her money and/or property."

The Petition also alleged:

24. The actions by Defendant, John Beasley, was part of a scheme to commit abuse or neglect . . . or exploitation as defined in T.C.A. § 71-6-102, et seq.; or theft of Ms. Koczwara's money or property by fraud, deceit, coercion, or otherwise.

25. At all times relevant, Ms. Koczwara was an elderly person or person of advanced age as defined in T.C.A. § 71-6-102(3) and T.C.A. § 71-6-120(3).

26. At all times relevant, Ms. Koczwara was a disabled adult within the meaning of T.C.A. § 71-6-120(2), including particularly, T.C.A. § 71-6-120(2)(A) & (B).

Accordingly, per the rule articulated in *Tennison Bros., Inc. v. Thomas*, the Default Judgment conclusively established that Mr. Beasley, by various means, including exploitation, theft, fraud, deceit, or coercion, caused Ms. Koczwara to make these transactions. *See id.* at 719–20 ("[A] default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based.").

The injuries at issue in this case were the loss of Ms. Koczwara's real property, personal property, and money. Thus, Mr. Rader, acting on behalf of Ms. Koczwara's estate and her next of kin, sought an award of unliquidated compensatory damages, punitive

damages, and a declaration that Mr. Beasley's quitclaim deed was invalid.[15] So at trial, Mr. Rader had the burden of establishing that Ms. Koczwara's injuries, her claimed damages, were caused by the conveyance and withdrawals for which Mr. Beasley's liability was established by the Default Judgment. We conclude that Mr. Rader satisfied his burden.

As recited above, Mr. Rader presented documentary evidence showing the transactions for which he was seeking relief. Those documents included six checks written from Ms. Koczwara's bank account: four payable to Mr. Beasley, one payable to "cash," and one payable to Mr. Beasley's friend. Mr. Rader also submitted evidence that $42,000 was wired from Ms. Koczwara's bank account to Mr. Beasley's investment account in January 2020. In addition, the Estate introduced into evidence the quitclaim deed that afforded Mr. Beasley a remainder interest in Ms. Koczwara's real estate.

For these reasons, we affirm the trial court's denial of Mr. Beasley's Motion for a Directed Verdict.

## B. Evidence

Second, Mr. Beasley contends that the trial court erred at trial by excluding "all proof that occurred after 2018," including the 2020 Will and the testimony of Mr. Beasley's witnesses regarding Ms. Koczwara's testamentary intent. According to Mr. Beasley, this evidence was relevant and material to rebutting the presumption of undue influence and to defend against the award of punitive damages.

"We review a trial court's decision regarding the admissibility of evidence . . . under an abuse of discretion standard." *Dickson v. Kriger*, 374 S.W.3d 405, 408 (Tenn. Ct. App. 2012) (citations omitted). Here, we conclude that the trial court acted within the bounds of its discretion when it excluded the evidence at issue. As discussed earlier, Mr. Beasley wanted to introduce certain evidence to establish Ms. Koczwara's intent, which he alleged was for Mr. Beasley to inherit her estate. However, we note that Mr. Beasley's proffered evidence did not pertain directly to the circumstances surrounding the transactions at issue in this case. Moreover, to the extent that any of this evidence may have been relevant in his defense of the claim that he caused Ms. Koczwara to make the transactions by theft, fraud, deceit, or coercion, that issue had already been resolved with the entry of the Default Judgment. *See In re Est. of Dates*, No. W2024-00488-COA-R3-CV, 2024 WL 5245289, at

---

[15] We note that the Petition seeks an award of damages to the Estate, and the trial court's final order awarded damages accordingly. The beneficiary of this action, however, is Ms. Koczwara's next of kin, not her estate. *See* Tenn. Code Ann. § 20-6-106(a).

*3 (Tenn. Ct. App. Dec. 30, 2024) ("[W]hether undue influence has occurred is a question of fact[.]") (citations omitted).

Likewise, regarding punitive damages, Mr. Beasley contends his evidence was admissible to establish his relationship with Ms. Koczwara, which was required to be considered under Tennessee Code Annotated § 29-39-104(a)(4). We disagree. Section 29-39-104 required the trial court to consider several factors, including the nature of the parties' relationship, but the "evidence" relevant to those factors was established by way of the Default Judgment.[16]

Mr. Beasley also contends that the trial court erred in allowing Mr. Rader to introduce into evidence photographs of Ms. Koczwara's personal property. Mr. Beasley does not, however, include any citation to legal authority or even explain how the introduction of the photographs was prejudicial. Likewise, Mr. Beasley fails to develop a legal argument on the trial court's purported error of applying the missing-witness rule. Thus, we find these issues waived. *See Sneed*, 301 S.W.3d at 615 ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

## V. OTHER ISSUES

We agree, however, with Mr. Beasley's claim that the trial court erred by declaring the 2020 Will void.

"[T]he mere entry of a default judgment in favor of a party does not, *ipso facto*, entitle that party to carte blanche damages. Rather, a trial court may only award those damages to which the party is legally entitled." *Tennison Brothers, Inc.*, 556 S.W.3d at 718 (quoting *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, at *6 (Tenn. Ct. App. Dec. 8, 2016)). Further, "Plaintiffs cannot extend the default judgment to matters outside the issues raised in the pleadings." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 439 (Tenn. 2012); *see Qualls v. Qualls*, 589 S.W.2d 906, 910 (Tenn. 1979) ("[A] default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." (quoting § 2663 Judgments in Default Cases, 10 Fed. Prac. & Proc. Civ. § 2663 (4th ed.))).

---

[16] Because we have affirmed the trial court's exclusion of Mr. Beasley's evidence on the ground of relevance, we need not address the trial court's application of the attorney-client privilege to Mr. Roberson's testimony. Mr. Beasley also argues that the trial court "erred by finding that Attorney Roberson should not have drafted the Decedent's 2020 Will." The court, however, made no such finding; its comment was made in *dicta* and was nothing more than an advisory statement.

Here, the Petition did not seek a declaration that the 2020 Will was void. Accordingly, we vacate the trial court's declaratory judgment as to the validity or invalidity of the purported 2020 Will.[17]

Mr. Beasley also contends that the trial court erred in ordering the sale of Ms. Koczwara's house. We agree. Mr. Rader commenced this action seeking, *inter alia*, a declaration that the deed at issue was void. The Petition did not request that the court order the sale of the real property. Thus, we vacate this aspect of its final judgment.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and vacated in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, John Beasley, for which execution may issue.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[17] Nevertheless, and as noted above, it is undisputed that the Probate Court of Putnam County admitted the 2016 Will to probate, thereby deeming that will to be the valid will. Conversely, the 2020 Will was not admitted to probate by the Probate Court. In fact, no petition has ever been filed to admit the 2020 Will to probate.